[No. H016854. Sixth Dist. Feb. 18, 1998.]

THE PEOPLE, Plaintiff and Respondent, v.
RICHARD CARL WILLIAMS, Defendant and Appellant.

**COUNSEL**

Deanna F. Lamb, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Ronald E. Niver and Bruce Ortega, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WUNDERLICH, J.—**

### I. *Statement of the Case*

Defendant Richard Carl Williams appeals from a judgment entered after a remand for resentencing. He claims the trial court violated his right to due process by failing to state reasons for adding a year to the sentence previously imposed. We disagree and affirm the judgment.

### II. *Background*[1]

Under a plea bargain, defendant agreed to plead guilty to three counts of residential burglary and one count of receiving stolen property. He also agreed to waive a jury trial on a fourth count of residential burglary and on prior felony convictions, which were alleged as enhancements and as strikes under the three strikes law (Pen. Code, §§ 667, subds. (b)-(i), 1170.12, subds. (a)-(e)).[2] In exchange, the prosecutor agreed, among other things, to a maximum sentence on these offenses and enhancements of 26 years. After a court trial, the court found defendant guilty of the fourth count and also found the prior conviction allegations true. It then sentenced him to 25 years. Finding aggravated circumstances, the court selected the upper six-year term for one burglary and then doubled it under the two strikes provision of the

---

[1]Defendant cites to the record in the previous appeal: *People* v. *Williams* (1996) 49 Cal.App.4th 1632 [57 Cal.Rptr.2d 448] (No. H013331). We granted the People's motion to take judicial notice of it. (Evid. Code, § 452, subd. (d)(1).)

[2]Unless otherwise specified, all further statutory references are to the Penal Code.

three strikes law (§§ 667, subd. (e)(1), 1170.12, subd. (c)(1)), for a total principal term of twelve years. It imposed consecutive 16-month terms for the other burglaries and a consecutive 8-month term for receiving stolen property. It added a five-year enhancement for one of the prior serious felony convictions (§ 667, subd. (a)) but stayed the second such enhancement because it had already used this prior conviction as a strike to double the term for burglary.[3] Finally, it added two 1-year prior prison term enhancements (§ 667.5).

In his first appeal, defendant asserted a variety of alleged judicial errors affecting his conviction and sentence. He also claimed that the limitation in the three strikes law on the amount of custody credit one can earn in prison (§§ 667, subd. (c)(5), 1170.12, subd. (a)(5)) did not apply to terms imposed for either enhancements or offenses that predated the three strikes law. The People also appealed, claiming that the trial court erred in staying one five-year enhancement. (*People* v. *Williams*, *supra*, 49 Cal.App.4th at p. 1635.)

This court agreed with defendant that the custody-credit limitation did not apply to terms imposed for offenses that predated the three strikes law. We rejected all of his other claims. We also agreed with the People that the court erred in staying one 5-year enhancement. (See *People* v. *Murillo* (1995) 39 Cal.App.4th 1298, 1306 [46 Cal.Rptr.2d 403]; *People* v. *Williams*, *supra*, 49 Cal.App.4th at p. 1635.) However, we could not simply modify the judgment to add the enhancement because the total sentence would then exceed the terms of the plea bargain. Consequently, we remanded the matter to allow the trial court to reconfigure defendant's sentence in accordance with our discussion and the plea bargain.

To keep defendant's sentence within the plea bargain maximum of twenty-six years, the trial court changed the burglary term from the six-year aggravated term to the four-year midterm and then doubled it for a total base term of eight years, thereby reducing defendant's sentence by four years. It left the rest of the sentence unchanged and added the 5-year enhancement that had been erroneously stayed, making the total sentence 26, instead of 25, years.

### III. *Discussion*

Defendant contends the trial court violated his federal constitutional right to due process because it failed to state reasons on the record for

---

[3]In staying the enhancement, the court observed, "[i]f the appellate court thinks that is inappropriate, they can tell us and maybe we'll have to resentence. But I think there is a viable argument that you're using the same prior for a dual use when you double the base term . . . and then add another five years."

imposing a longer sentence than it originally imposed.[4] For several reasons, we reject this claim.

## A. *The Pearce Rule*

■ In *North Carolina* v. *Pearce* (1969) 395 U.S. 711 [89 S.Ct. 2072, 23 L.Ed.2d 656], the court held that when a defendant succeeds on appeal in having a conviction set aside and upon retrial is convicted again, the court may not thereafter impose a greater sentence as punishment for the successful appeal. (*Id.* at pp. 723-724 [89 S.Ct. at pp. 2079-2080].) "Due process of law . . . requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge." (*Id.* at p. 725 [89 S.Ct. at p. 2080], fn. omitted.) Thus, to assure the absence of such motivation, the court promulgated a prophylactic rule of presumptive vindictiveness: "whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal." (*Id.* at p. 726 [89 S.Ct. at p. 2081].)

## B. *Failure to Object*

■ The record reflects that when the court imposed the greater sentence, defendant did not object on the ground that the court failed to state

---

[4]The double jeopardy clause of the California Constitution bars imposition of a greater sentence after a retrial. (Cal. Const., art. I, § 15; *People* v. *Henderson* (1963) 60 Cal.2d 482, 495-496 [35 Cal.Rptr. 77, 386 P.2d 677].) However, as defendant concedes, the bar is inapplicable where, as here, the trial court was not authorized to stay the five-year enhancement. (§ 1385; *People* v. *Marquez* (1993) 16 Cal.App.4th 115, 120, fn. 2 [20 Cal.Rptr.2d 365], overruled on other grounds in *People* v. *Cuevas* (1995) 12 Cal.4th 252, 275, fn. 5 [48 Cal.Rptr.2d 135, 906 P.2d 1290]; see *People* v. *Serrato* (1973) 9 Cal.3d 753, 764 [109 Cal.Rptr. 65, 512 P.2d 289], disapproved on other grounds in *People* v. *Fosselman* (1983) 33 Cal.3d 572, 583, fn. 1 [189 Cal.Rptr. 855, 659 P.2d 1144].)

reasons. Nor did he complain that the additional year was vindictive retaliation.[5]

 In *U.S.* v. *Vontsteen* (5th Cir. 1992) 950 F.2d 1086, the court held that the failure to object to a sentence on the ground of vindictiveness waived any claim based on an alleged violation of the *Pearce* rule. " 'No procedural principle is more familiar to this Court than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.' " (*Id.* at p. 1089, quoting *Yakus* v. *United States* (1944) 321 U.S. 414, 444 [64 S.Ct. 660, 677, 88 L.Ed. 834].) The court explained that the contemporaneous objection rule is rooted " 'in obvious considerations of finality of the criminal trial process, of judicial efficiency, and of avoiding trials by ambush.' " (950 F.2d at p. 1089.) The court reasoned that ". . . the burden imposed by the contemporaneous objection rule on the defendant's right to be free of judicial vindictiveness is minimal. After the district court has announced its sentence, any vindictiveness present in the resentencing has already occurred. [Defendant], and defendants like him, have nothing further to fear and nothing to lose by objecting to the sentence." (*Id.* at p. 1090.) Moreover, ". . . any diminution in the defendant's right protected by *Pearce* is outweighed by gains to the adversary system, judicial economy, and appellate orderliness." (*Ibid.*)

In *People* v. *Scott* (1994) 9 Cal.4th 331 [36 Cal.Rptr.2d 627, 885 P.2d 1040], the California Supreme Court applied the contemporaneous objection rule to alleged sentencing error similar to that asserted by defendant in this case. Under California statutes and sentencing rules, trial courts have a mandatory duty to articulate the reasons for any discretionary sentencing choice. (See §§ 1170, subd. (a)(3), 1170.3; Cal. Rules of Court, rules 401, 403, 406(b).) The *Scott* court held that the failure to object waives any claim on appeal that the court did not properly make or articulate its discretionary choices. (*People* v. *Scott, supra,* 9 Cal.4th at p. 353.)

The *Pearce* rule and the state sentencing requirements are functionally equivalent. Both are designed to encourage the careful and reasonable

---

[5]Indeed, the record indicates that defense counsel agreed to the sentence. At the hearing, defense counsel noted that the original sentence was 25 years. The court noted that it had conferred informally with counsel in chambers and "[w]e've agreed to a sentence that would frankly be a total of—[.]" At that point, defense counsel interjected, "26." The court continued, "26. And that's basically by leaving all the sentencing the same except for Count 5A, which was the primary term; that would be the midterm instead of the upper term, which is eight years. And the one [section] 667(a) the Court stayed would be imposed, and everything else would remain the same. That brings a total of 26 years." Defense counsel responded, "Correct."

exercise of sentencing authority based on objective criteria and to prevent vindictive or arbitrary sentences. Moreover, if the court's statement of reasons appears unsound or unsupported, the parties can immediately challenge it or seek clarification. Thereafter, the statement of reasons provides reviewing courts with a record with which to determine the propriety of a sentence for vindictiveness or arbitrariness.

Furthermore, the rationale for the holding in *Scott* is essentially the same as that expressed by the court in *Vontsteen*. The *Scott* court explained that "[a]lthough the court is required to impose sentence in a lawful manner, counsel is charged with understanding, advocating, and clarifying permissible sentencing choices at the hearing. Routine defects in the court's statement of reasons are easily prevented and corrected if called to the court's attention. As in other waiver cases, we hope to reduce the number of errors committed in the first instance and preserve the judicial resources otherwise used to correct them." (*People* v. *Scott, supra,* 9 Cal.4th at p. 353.)

■ Given the identity between the *Pearce* rule and state sentencing requirements and the beneficial purposes served by requiring a contemporaneous objection, we agree with *Vontsteen* and hold that the failure to object waives any claim the court violated the *Pearce* rule by not stating reasons for imposing a greater punishment.

Defendant claims that requiring an objection is inappropriate because the *Pearce* rule was created to protect a constitutional right. "In light of the nature of the constitutional right involved, it naturally follows that the defendant himself must acquiesce in the waiver of a statement of reasons." This argument is meritless.

■ Defendant does not have a constitutional right to a statement of reasons; rather, requiring a statement is a prophylactic rule created by the Supreme Court to prevent vindictiveness from entering the sentencing process. (See *Texas* v. *McCullough* (1986) 475 U.S. 134, 138 [106 S.Ct. 976, 978-979, 89 L.Ed.2d 104] [a judicially created means of effectuating the rights secured by the Constitution].) Moreover, that the *Pearce* rule has constitutional underpinnings does not automatically mean that only the defendant can waive a statement of reasons. (See *In re Horton* (1991) 54 Cal.3d 82, 95 [284 Cal.Rptr. 305, 813 P.2d 1335].) Except for a handful of express constitutional rights that are deemed particularly "fundamental" and personal, defense counsel is fully authorized to waive rights of constitutional dimension, directly by express waiver or indirectly by not raising an objection or making a particular motion. (*Ibid.*) Defendant provides neither authority nor argument to suggest that the alleged constitutional right to a statement of reasons is too fundamental and personal to be waived by defense

counsel. We do not find that it is. (See *U.S.* v. *Vontsteen, supra,* 950 F.2d at p. 1089 [enumerating various rights defendant counsel has authority to waive].)

### C. *Pearce Inapplicable*

■ As our Supreme Court regularly does, we proceed to the merits of a claim, despite a waiver, to preclude a claim of ineffective assistance based on counsel's failure to object. (See, e.g., *People* v. *Marshall* (1996) 13 Cal.4th 799, 831 [55 Cal.Rptr.2d 347, 919 P.2d 1280]; *People* v. *Mickey* (1991) 54 Cal.3d 612, 665 [286 Cal.Rptr. 801, 818 P.2d 84]; *People* v. *Ashmus* (1991) 54 Cal.3d 932, 976 [2 Cal.Rptr.2d 112, 820 P.2d 214]; *People* v. *Morris* (1991) 53 Cal.3d 152, 196 [279 Cal.Rptr. 720, 807 P.2d 949]; *People* v. *Sully* (1991) 53 Cal.3d 1195, 1218 [283 Cal.Rptr. 144, 812 P.2d 163].) As we shall explain, there was no basis for an objection because the *Pearce* rule was not applicable.

Defendant contends the *Pearce* rule applies because the court resentenced him to an additional year.

The facts in *Pearce* provide a touchstone for application of the rule. There, the defendant succeeded on appeal in obtaining a new trial. After he was reconvicted, the court imposed a harsher sentence than previously imposed.

■ Since *Pearce,* the Supreme Court has held that the *Pearce* rule applies only " 'where its "objectives are thought most efficaciously served," ' " that is, where there is a "reasonable likelihood . . . the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority." (*Alabama* v. *Smith* (1989) 490 U.S. 794, 799-800 [109 S.Ct. 2201, 2205, 104 L.Ed.2d 865].)

For example, in *Colten* v. *Kentucky* (1972) 407 U.S. 104 [92 S.Ct. 1953, 32 L.Ed.2d 584] the court found the rule inapplicable. There, the defendant was convicted of a misdemeanor and sentenced in an inferior court. He then exercised his statutory right to trial de novo in superior court. He was convicted again but this time given a greater sentence. The Supreme Court opined that the hazard of being penalized for seeking a new trial was not inherent in the trial de novo system. (*Id.* at p. 116 [92 S.Ct. at p. 1960].) The court explained that a trial de novo is a fresh determination of guilt or innocence, not one at which the defendant is asking the superior court to do over what it thought it had already done correctly. (*Id.* at pp. 116-117 [92 S.Ct. at pp. 1960-1961].) Thus, it is not reasonably likely that a harsher sentence would be the result of vindictiveness. On the contrary, "it no more follows that [a harsher] sentence is a vindictive penalty for seeking a [de novo] trial than that the inferior court imposed a lenient penalty." (*Id.* at p. 117 [92 S.Ct. at pp. 1960-1961].)

Similarly, in *Chaffin* v. *Stynchcombe* (1973) 412 U.S. 17 [93 S.Ct. 1977, 36 L.Ed.2d 714], the court found the possibility of vindictiveness de minimis where a second, properly instructed jury, on retrial following a successful appeal, imposes a higher sentence than a prior jury. The second jury, "unlike the judge who has been reversed, will have no personal stake in the prior conviction and no motivation to engage in self-vindication. Similarly, the jury is unlikely to be sensitive to the institutional interests that might occasion higher sentences by a judge desirous of discouraging what he regards as meritless appeals." (*Id.* at p. 27 [93 S.Ct. at p. 1983], fn. omitted.)

In *Texas* v. *McCullough, supra*, 475 U.S. 134, the court found no likelihood of vindictiveness where a trial court grants a motion for new trial and, after a second conviction, imposes a harsher sentence than that previously imposed by the jury. Under such circumstances, the trial court has no personal stake in the original outcome, has not been reversed, and therefore has no motive to vindicate itself or punish the defendant.

In *Alabama* v. *Smith, supra*, 490 U.S. 794, the court reached the same conclusion where a greater penalty is imposed after trial than was imposed under a prior guilty plea, which had been withdrawn: ". . . the increase in sentence is not more likely than not attributable to the vindictiveness on the part of the sentencing judge." (*Id.* at p. 801 [109 S.Ct. at p. 2205].)

As *Pearce* and the analyses in these cases reveal, the Supreme Court is concerned with situations where the judge has a stake in the original outcome and the defendant successfully reverses it, thereby forcing the judge to redo what he or she had done. In such situations, the judge who has been reversed may engage in self-vindication. Thus, the Supreme Court considers it reasonably likely, indeed presumes, that any increase in the defendant's sentence was motivated by retaliatory vindictiveness.

In this case, defendant failed in his first appeal to show judicial error, obtain relief from any part of the judgment, or otherwise cause the trial judge to do anything over again. Indeed, had only defendant appealed, the judgment would have been affirmed without remand.[6] Rather, it was the People who established judicial error and precipitated the remand. Under

---

[6]According to defendant, he prevailed on an issue that "guides the calculation of credits in a way that allows more credit *than indicated by the sentencing court.*" (Italics added.) However, the trial court did not indicate one way or the other how much credit he would thereafter be able to earn. Moreover, courts have no authority to regulate the rate at which a defendant is able to earn credit against a sentence once it has been imposed. Finally, we note that at resentencing, the court credited defendant with the same number of days it had previously credited and then added additional credit for time served between the entry of judgment and the remand. Thus, defendant cannot reasonably claim that his appeal "corrected" the trial court's supposed misconception of the law.

these circumstances, vindictive retaliation would more likely be directed against the People, rather than defendant.

Defendant claims, however, that because he asserted appellate claims "of a nature to upset a jurist," it became more likely than not that if the judge increased his sentence on remand, doing so would be motivated by a desire to retaliate against him.[7] We find this reasoning unconvincing.

As noted above, in *Texas* v. *McCullough, supra*, 475 U.S. 134, the court found the presumption of vindictiveness inapplicable where the defendant filed a successful motion for new trial, and, after he was convicted, the trial judge imposed a harsher sentence than that previously imposed by the jury. Among other things, the court rejected the notion that trial judges would first be angered by the temerity of defendants who file motions for new trial and then become annoyed at having to sit through trials whose outcomes were forgone conclusions. "We decline to adopt the view that the judicial temperament of our Nation's trial judges will suddenly change upon the filing of a successful post-trial motion." (*Id.* at p. 139 [106 S.Ct. at p. 979].)

We similarly reject defendant's view that the temperament of a trial judge changes because a defendant files an *unsuccessful* appeal. Criminal appeals are such a routine, if not inevitable, part of the criminal justice system that professional jurists expect defendants to file them and raise all colorable claims of judicial error. Moreover, when an appellate court later rejects a defendant's claims, it fully vindicates the trial judge's performance. Thus, there is little basis for further self-vindication, and the possibility of a retaliatory basis for an increase in sentence on remand from a People's appeal is not, in our view, more likely than not.

Furthermore, a successful appeal by the People implies that the trial judge initially imposed a sentence that was too lenient. It no more follows that the imposition of a harsher sentence is retaliation against the defendant for making unsuccessful appellate claims than correction of a judicial error in defendant's favor. Under such circumstances, therefore, we conclude it both unnecessary and inappropriate to apply the presumption of vindictiveness.[8]

The unique circumstances here further support our conclusion. As noted, the judge selected the aggravated term for burglary and imposed consecutive, rather than concurrent, terms for the remaining offenses. On remand,

---

[7] In his first appeal, defendant claimed there was insufficient evidence to support a conviction for burglary, the court failed to render a verdict on the prior conviction allegations, and the court erred in not striking an enhancement allegation, misapplying the three strikes law, and not determining whether to strike a strike allegation in furtherance of justice. (See *People* v. *Williams, supra*, 49 Cal.App.4th at p. 1635.)

[8] We recognize that if the trial judge imposed the additional sentence as retaliation for filing the previous appeal, defendant would be entitled to relief. However, where the presumption is inapplicable, the burden is on defendant to prove vindictiveness. (*Wasman* v. *United States*

the judge had to find room for an additional five-year mandatory enhancement. To avoid violating the plea bargain, he eliminated four years by changing the term for burglary to the middle term. In doing so, however, the court had to disregard the aggravating facts that led him first to pick the upper term. Under these circumstances, the additional year defendant received does not reasonably suggest an effort to punish defendant for his unsuccessful appellate claims.

Nor does the fact that the court declined to strike one of the one-year enhancements so as to keep the term twenty-five years. Under section 1170.1, former subdivision (h), a court had discretion to strike a prison term "if it determines that there are circumstances in mitigation of the additional punishment and states on the record its reasons for striking the additional punishment." (Stats. 1994, ch. 1188, § 12.7.) Here, the initial sentence implies that the court found no such mitigating circumstances, and, as noted, on remand the court disregarded aggravating circumstances to lower the burglary term. Defendant does not now suggest any mitigating circumstances that would have justified striking the enhancement. Moreover, doing so simply to preserve the original length of defendant's sentence would, in our view, be wholly inappropriate, if not an abuse of discretion. Moreover, the circumstances do not indicate that a sentence longer than 25 years would be excessive or inappropriate. On the contrary, but for the plea bargain, defendant could have been sentenced to more than 26 years, and by entering the bargain, defendant implicitly conceded that the charges and enhancements would justify a sentence of 26 years.

### Disposition

The judgment is affirmed.

Premo, Acting P. J., and Elia, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 20, 1998.

---

(1984) 468 U.S. 559, 569 [104 S.Ct. 3217, 3223, 82 L.Ed.2d 424].) The record before us does not support such a claim.