Filed 9/23/13  P. v. Awan CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

| | |
|---|---|
| THE PEOPLE, | C067626 |
| Plaintiff and Respondent, | (Super. Ct. No. LF010862B) |
| v. | |
| KHALID MAHMOOD AWAN, | |
| Defendant and Appellant. | |

A jury convicted defendant Khalid Mahmood Awan of possession of methamphetamine for sale and found that he was personally armed with a firearm.  The jury acquitted defendant on the remaining counts.

The court sentenced defendant to state prison for an aggregate term of four years four months.

Defendant appeals.  He contends the trial court abused its discretion and violated his constitutional rights in denying probation.  We disagree and will affirm the judgment.

Facts at Trial[1]

On August 15, 2008, Lodi police officers went to a two-bedroom residence located on Rutledge Drive to conduct a probation search on Todd Mileham and Sheila Robinson. Mileham and Robinson lived in a walled-off dining room. Defendant occupied one of the two bedrooms with Elena Chavez and their infant child. Defendant was not present when the officers arrived. A search of defendant's bedroom revealed a safe containing a total of 57 grams, or two ounces, of methamphetamine in two plastic baggies; numerous tablets of other drugs, including Soma and Diazepam; bank account deposit receipts; cell phones; keys; a total of $3,165 in cash in two plastic baggies; a handgun, magazine, and five live rounds; and pornographic materials. Other items found in defendant's bedroom included a bank statement of accounts and checkbook in defendant's name, an unloaded pistol, 7.4 grams of marijuana, a digital pocket scale, a purse with tablets of Oxycontin and Endocet, a form and a receipt in Chavez's name, and tablets of other drugs including Percocet, Alprazolam, Vicodin, and Soma. In the living room close to defendant's bedroom, an officer found a small stack of mail, some of which was addressed to defendant at the Rutledge Drive address. The mail was not booked into evidence nor was a photo of it taken.

Mileham testified he used methamphetamine daily and bought it from defendant, never from Chavez. Mileham stated that he paid rent in cash to defendant. Mileham saw defendant deal methamphetamine numerous times and occasionally marijuana.

Defendant testified at trial and denied living at the residence that was searched, denied ownership of the safe and contents, and denied selling methamphetamine to

---

[1] We recount those facts underlying defendant's conviction for possession of methamphetamine for sale on August 15, 2008. Defendant was acquitted of possession of methamphetamine and possession of methamphetamine for sale on November 14, 2008.

Mileham. Defendant explained that his mail was at the residence because Chavez had picked it up from a post office box she shared with him and his whole family.

Sentencing

Prior to sentencing, the probation officer reported that defendant did not accept responsibility, blamed others including Chavez who he planned to marry, and asserted the charges and his conviction stemmed from racial prejudice. In aggravation, the probation officer noted that the crime indicated planning, sophistication, or professionalism and involved a large quantity of contraband, and that defendant's conduct reflected a serious danger to society. In mitigation, the probation officer noted that defendant had an insignificant criminal record. The probation officer recommended that probation be denied because defendant was not a suitable candidate for probation.

Defense counsel filed a written request for probation, discussing the factors related to the crime and to defendant. Although police found contraband, money, firearms, and personal effects belonging to defendant and Chavez in the bedroom, defense counsel noted that defendant was not the subject of the initial probation search and was not present, and claimed defendant did not live at the residence which was the home of Chavez and their child. Defense counsel noted defendant's prior misdemeanor battery conviction for which he successfully completed probation. Defense counsel asserted defendant would be able to comply with probation having previously completed probation as well as his compliance with court orders and appearances during the pendency of the current charges. Although unemployed, defendant had previously worked in various positions. Defense counsel claimed defendant was motivated to provide for his family and needed to support his six children. Defense counsel claimed defendant was remorseful, posed no danger to anyone, and that defendant's role was "minor."

At sentencing, the court stated that it had read the probation report and defense counsel's written request for probation. Defense counsel asserted that defendant was

3

suitable for probation because defendant had no significant criminal record and reiterated that defendant had made his appearances. Defense counsel claimed there were no victims, harm, or monetary loss. Defense counsel commented that the "going rate" for defendant's offense in "early resolution court" was four months local and if not in such court, six months. With the gun enhancement, defense counsel suggested "double that time to a year local."

The prosecutor opposed probation and claimed defendant would be unable to comply with probation, reiterating the probation officer's statement that defendant blamed everyone but himself and refused to accept responsibility. The prosecutor stated that defense counsel was "right in some respects. This case could have been a probation case, and that's what we offered him, to accept responsibility early and resolve the case." The prosecutor explained the original offer was four years and four months, but at trial probation had been offered due to court congestion and the prosecutor's caseload. The prosecutor asserted that probation would have been a "slap on the wrist" for two ounces of methamphetamine and a firearm. The prosecutor sought the midterm based on the quantity of methamphetamine and the gun.

Defense counsel objected to using defendant's failure to accept blame as a factor weighing against probation, commenting that there were people who entered a plea without accepting blame. Defense counsel sought the low term at most.

The trial court noted that defendant had also been offered a 90-day diagnostic and a year local which defendant also rejected. The court commented that it had "tried very hard to convince [defendant] to take a local disposition and [he] absolutely would not do it" and had explained to defendant that if he went to trial "which is [his] right" and he was convicted, he had "a very good possibility of going to prison and [he] decided to take that chance."

Defendant made a statement. He claimed that he did not blame Chavez. He said the drugs were not hers, they were his. He admitted that that was not what he had

4

previously said. Then defendant said the drugs belonged to Mileham. When the court confronted defendant that he had just admitted the drugs belonged to him, defendant explained that he did not want Chavez blamed. He also admitted the safe and gun were in his room but claimed he did not have the combination to the safe. When the trial court confronted defendant with the defense at trial where he essentially blamed Chavez, defendant asked for a *Marsden*[2] hearing. Defendant subsequently withdrew his request for new counsel.

At the reconvened sentencing hearing, the court commented, "I know your words today are different than what your words were during trial, and that's because today's the day for sentencing." The court noted that defendant had been given a "fair offer" at the outset and stated: "I'll be honest with you, when I came out here I was -- I was thinking I've never thought of probation. Probation is not even gonna [*sic*] be considered. I've read your attorney's brief and I've considered all the exhibits in that brief, the probation officer feelings that probation's not appropriate. The only question in my mind is should you get the lower term or the midterm." The court imposed the low term based on defendant's lack of a criminal record and his age (30 years old), but noted his lack of remorse or consideration for the victims, the substantial amount of contraband, and the presence of a gun.

Analysis

Defendant contends the court abused its discretion and violated his constitutional rights to a jury trial and due process in denying probation for exercising his right to a trial. Defendant argues that the court stated "in effect" that defendant had "forfeited his right to be given a chance on probation by insisting on going to trial."

---

[2] *People v. Marsden* (1970) 2 Cal.3d 118.

5

The People assert that defendant's constitutional challenge has been forfeited by his failure to raise the issue at sentencing. Defendant replies that his constitutional challenge is not forfeited to the extent he argues that the trial court's abuse of discretion in denying probation had the additional legal consequence of violating the Constitution.

A failure to object forfeits a claim on appeal that the court erroneously exercised its discretionary sentencing choices. (*People v. Scott* (1994) 9 Cal.4th 331, 353.) A failure to object to a sentence based on vindictiveness is also forfeited. (See *United States v. Vontsteen* (5th Cir. 1992) 950 F.2d 1086, 1088-1089 [vindictiveness claim based on harsher sentence after successful appeal]; *People v. Williams* (1998) 61 Cal.App.4th 649, 653-657 [same] (*Williams*).)

Assuming the constitutional argument has been forfeited but to forestall an ineffective assistance of counsel claim (see *Williams, supra,* 61 Cal.App.4th at p. 657), we reject defendant's constitutional challenge on the merits.

"It is well settled that to punish a person for exercising a constitutional right is 'a due process violation of the most basic sort.' (*Bordenkircher v. Hayes* (1978) 434 U.S. 357, 363 [54 L.Ed.2d 604, 610, 98 S.Ct. 663, 668].) The constitutional right to trial by jury in criminal prosecutions is fundamental to our system of justice [citations]; thus, [our Supreme Court has] stated that 'only the most compelling reasons can justify any interference, however slight, with an accused's prerogative to personally decide whether to stand trial or to waive his rights by pleading guilty.' [Citation.] 'A court may not offer any inducement in return for a plea of guilty or nolo contendere. It may not treat a defendant more leniently because he foregoes his right to trial or more harshly because he exercises that right.' [Citation.]" (*In re Lewallen* (1979) 23 Cal.3d 274, 278-279, italics omitted (*Lewallen*); *People v. Collins* (2001) 26 Cal.4th 297, 305–306.) But "[t]he mere fact . . . that following trial defendant received a more severe sentence than he was offered during plea negotiations does not in itself support the inference that he was penalized for exercising his constitutional rights." (*People v. Szeto* (1981) 29 Cal.3d 20,

6

35.) "[U]nder appropriate circumstances a defendant may receive a more severe sentence following trial than he would have received had he pleaded guilty; the trial itself may reveal more adverse information about him than was previously known." (*Lewallen, supra*, 23 Cal.3d at p. 281.) "There must be some showing, properly before the appellate court, that the higher sentence was imposed as punishment for exercise of the right." (*People v. Angus* (1980) 114 Cal.App.3d 973, 989-990.)

*Lewallen*, *supra*, 23 Cal.3d 274 determined that two statements made by the trial court demonstrated that the court imposed a harsher sentence due to the petitioner's exercise of his jury trial right. The trial court questioned defense counsel's suggestion that informal probation was sufficient " 'after a jury trial' " and stated that the defendant would not be " 'penalized' " for exercising his jury trial right " 'but on the other hand he's not going to have the consideration he would have had if there was a plea.' " (*Id.* at pp. 277, 280.)

In another case, focusing on the court's statement that "if the minor inconvenienced witnesses by having them come to court for an adjudication hearing, the option of a disposition under Welfare and Institutions Code section 725, subdivision (a) would no longer be available to him," the Court of Appeal in *In re Edy D.* (2004) 120 Cal.App.4th 1199 determined that the court improperly considered the minor's election to exercise his right to an adjudication. (*Id.* at p. 1202.)

In *People v. Morales* (1967) 252 Cal.App.2d 537 (*Morales*), the court imposed a consecutive sentence because it was not "fair" for the defendant "to come to Court and demand a jury trial, demand the services of the public defender . . . when there really isn't any defense to this case . . . ." (*Id.* at p. 242, fn. 4.) *Morales* rejected the People's position that there were factors supporting the sentencing decision because the trial court did not consider them. (*Id.* at p. 546.) *Morales* concluded that the trial court penalized the defendant more harshly for exercising his right to jury trial. (*Id.* at pp. 543-547.)

7

In *People v. Quintanilla* (2009) 170 Cal.App.4th 406 (*Quintanilla*), the sentencing court "noted that defendant's acceptance of responsibility came only after he rejected two plea offers and went to trial--as a result, [the child sexual assault victim] was forced to endure cross-examination." (*Id.* at p. 412.) The Court of Appeal in *Quintanilla* stated, "Read in context, it is clear the court was explaining why defendant's belated expression of acceptance of responsibility did not weigh more heavily in mitigation: Defendant's profession of remorse may have been heartfelt, but it only surfaced after the jury had found him guilty." (*Id.* at p. 413.)

Defendant argues that the court here in its statement of reasons "expressed the intention of punishing [him] for taking his case to trial instead of accepting an early disposition and probation . . . ." The People assert that defendant has taken the trial court's statements out of context and when considered in context, the court meant that probation was not warranted due to defendant's lack of remorse.

We conclude that the court's comments are more akin to those in *Quintanilla* and do not satisfy the showing required to demonstrate a constitutional violation. The court had read defendant's written request for probation. Defense counsel initiated the discourse about early disposition and probation, noting the "going rate," "early resolution court," and local time for defendant's offense and enhancement. The prosecutor responded and explained the original offer was four years four months but at trial, probation had been offered (due to court congestion and his caseload) which was a "slap on the wrist." The court's response, read in context, reflects that the court was explaining why defendant's lack of remorse or his failure to accept responsibility and the amount of contraband justified denial of probation and imposition of the low term. The court's comments reflect that it took into account defendant's attitude toward the offense and his character as evidenced by his behavior and demeanor at trial and at sentencing. The court had acquired much more information about defendant and the case, having presided over trial, heard the evidence, and read and considered defense counsel's written request for

8

probation in which defendant denied living at the residence. Defendant's statements at sentencing wherein he admitted living at the residence and claimed both that he possessed the drugs and did not possess the drugs were conflicting in and of themselves and conflicted with his trial testimony. Moreover, the court cited reasons for denying probation and sentencing defendant to prison: his lack of remorse and the substantial amount of contraband. There is no reasonable basis for concluding that the trial court punished defendant for exercising his jury trial right.

Defendant claims the court erroneously relied upon his failure to take responsibility or lack of remorse because he consistently denied culpability for the offenses. Defendant asserts the evidence was conflicting and the jury acquitted him on several other counts.

We find no abuse of discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.) A trial court may rely upon a defendant's lack of remorse in denying probation. (Cal. Rules of Court, rule 4.414(b)(7).)[3] When a defendant denies culpability, a trial court assesses the evidence and where it is overwhelming, the trial court may rely upon lack of remorse in aggravation. (*People v. Leung* (1992) 5 Cal.App.4th 482, 507-508.) It is the sentencing court's assessment of the evidence which controls whether the lack of remorse factor applies. (See *People v. Towne* (2008) 44 Cal.4th 63, 85-86.)

Mileham testified defendant, not Chavez, sold methamphetamine to him but did not testify defendant sold the other drugs (oxycodone and hydrocodone) found in the bedroom. The jury convicted defendant of possession of methamphetamine for sale for the two ounces of methamphetamine found in the safe but acquitted him on counts charging possession of hydrocodone and oxycodone on the same occasion and counts charging possession of methamphetamine and possession of methamphetamine for sale

---

[3] Further references to rules are to the California Rules of Court.

on another occasion which did not involve Mileham or the Rutledge Drive residence. Defendant shared the bedroom with Chavez and his bank account statement and checkbook were found in the room. Mail addressed to defendant at the Rutledge Drive address was found as well. The evidence against defendant for possession of methamphetamine for sale (the methamphetamine found in the safe in his bedroom) was overwhelming. Although defendant testified at trial and denied culpability, the court had the opportunity to observe his demeanor on the stand. The trial court obviously did not believe defendant. Further, defendant admitted at one point at sentencing that the methamphetamine belonged to him and that he resided in the bedroom which conflicted with his testimony at trial. The trial court was justified in its disbelief of defendant's claim that he was remorseful. (Rule 4.408(a).)

The People claim that the trial court properly exercised its discretion, having considered and relied upon the factors in aggravation listed in the probation report which included appropriate and independent factors in addition to defendant's lack of remorse. Even assuming lack of remorse was not a proper factor, we agree that the error was harmless.

"The mere fact a trial court erroneously relies upon certain factors in [making its sentencing decision] does not per se require reversal. Reversal is only required where there is a reasonable probability the trial court would sentence the defendant differently absent the erroneous factors. [Citation.] Thus, where the trial court has stated several factors warranting the [sentencing decision], and only some of those factors are erroneous, the sentence is generally affirmed. [Citations.] Indeed, even one valid factor is sufficient to justify the [sentencing decision]. [Citations.]" (*People v. Holguin* (1989) 213 Cal.App.3d 1308, 1319.)

In denying probation and sentencing defendant to prison for the low term, the trial court cited not only defendant's lack of remorse but also the amount of contraband, almost two ounces, a substantial amount. (Rule 4.421(a)(10).) The trial court obviously

10

concurred with the prosecutor's position that probation would have been a "slap on the wrist" for two ounces of methamphetamine and a firearm. We find any error in relying upon remorse harmless because there is no showing that defendant would receive probation on remand. Given the substantial amount of contraband and the presence of a gun, there is no reason to believe the court's comments about probation having been offered inappropriately affected its decision. Further, any error was harmless, even assuming for the sake of argument that review is governed by the *Chapman* standard used to evaluate federal constitutional error, i.e., whether the error was "harmless beyond a reasonable doubt." (*Chapman v. California* (1967) 386 U.S. 18, 24 [17 L. Ed. 2d 705].)

DISPOSITION

The judgment is affirmed.


      BLEASE      , Acting P. J.


I concur:


      MAURO      , J.

I concur, but write separately to express three things.

First, because defendant failed to object at sentencing, the majority opinion properly concludes he has forfeited his challenges to the trial court's reasons for denying probation. I would not reach the merits of defendant's claims under the rubric of incompetence of counsel, because defendant fails to brief that issue. (See *People v. Anderson* (2007) 152 Cal.App.4th 919, 929 ["A point not argued or supported by citation to authority is forfeited"].) I would not exercise my discretion to bypass forfeiture *in this case*.

Second, assuming, as does the majority opinion, that defendant's claim were couched as an argument that defense counsel was incompetent in failing to object, defendant would have to show "there is a reasonable probability" that he would have obtained a better result in the absence of counsel's failings. (*Strickland v. Washington* (1984) 466 U.S. 668, 694 [80 L.Ed.2d 674, 697]; see *People v. Ledesma* (1987) 43 Cal.3d 171, 217-218.) Therefore, even if I agreed with defendant that the trial court erred, I would apply the *Strickland* standard of prejudice, not the *Chapman* standard referenced by the majority opinion. Any error in this case would be harmless because the trial court's concededly valid reason for denying probation, namely, the large quantity of drugs, amply justifies the trial court's view that probation was not appropriate, and the only question was whether to give defendant the low term or the middle term, a question resolved *in defendant's* favor. Therefore, "It is improbable that a more favorable result would be obtained by a remand for sentencing" in this case. (*People v. Parrott* (1986) 179 Cal.App.3d 1119, 1125.)

Third, were it necessary to reach the merits, I would agree with the majority opinion's conclusion that, read in context, the trial court's comments at sentencing were not improper, but I add the following observations: The trial court did not deny probation based on defendant's exercise of his right to a jury trial; it instead reminded defendant

12

that before trial it had indicated a prison sentence was likely if defendant were convicted. Nor did the trial court improperly rely on defendant's lack of remorse, given defendant's implausible claim at the sentencing hearing that he was not responsible for the drugs or gun found in the safe in his bedroom.

Read in context, the trial court's comments clearly signal that it was noting evidence supportive of its subsequent permissible observation that defendant lacked remorse, a proper consideration for sentencing. The trial court was permitted to consider what it had observed at trial in its evaluation of defendant for sentencing purposes. This additional information regarding defendant's attitude toward his crimes supported, together with defendant's blame-shifting and gamesmanship at sentencing, the trial court's later observation that defendant lacked remorse. When remarking on defendant's failure to resolve his case early, the trial court was clearly focused on these observations, which it had witnessed firsthand, both at the trial and during the sentencing hearing. The trial court did not sentence defendant more harshly *because* defendant exercised his right to a jury trial.

DUARTE, J.