Filed 6/20/25  P. v. Hernandez CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>MATTHEW HERNANDEZ,<br><br>    Defendant and Appellant. | B335034<br><br>(Los Angeles County<br> Super. Ct. No. BA486237) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Sam Ohta, Judge.  Affirmed.

Jennifer A. Mannix, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, and Michael J. Wise, Deputy Attorney General, for Plaintiff and Respondent.

Defendant Matthew Hernandez was a member of the Boyle Heights gang. He and a fellow gang member shot and killed a rival gang member. A jury found Hernandez guilty of first degree murder, shooting at an occupied motor vehicle, and assault with a semiautomatic firearm. The trial court sentenced Hernandez to 3 years plus 50 years to life in state prison. On appeal, Hernandez raises instructional and sentencing errors. We affirm the judgment.

## FACTUAL BACKGROUND[1]

On March 17, 2020, Jose Falcon (the victim) was shot and killed by two armed men, who were later identified as Hernandez and Bryan Alexis Lopez.[2] At approximately 9:00 a.m. that day, the victim asked to use his friend Oscar Robledo's truck to charge his cell phone. Robledo gave the victim his car keys. When the victim was inside the truck, the two gunmen approached. Robledo was nearby. Robledo described one gunman as "chubbier" and the other as "skinnier."

One of the gunmen said, "Where are you from," and "Boyle Heights," as if he was claiming allegiance to that gang. Robledo responded that he was a "paisa," meaning that he was not from the United States. The gunmen told the victim that they knew he was from White Fence, a rival gang. At some point, the chubbier gunman directed the skinnier one to get Robledo on his knees. The skinner gunman pointed the gun at Robledo, who got down on the ground. The gunmen wanted the victim to remove his clothing, but he refused. They tried to force the victim out of the truck, but he resisted and

---

[1] At trial, Hernandez did not testify or call any witnesses in his defense.

[2] Lopez was charged and tried with Hernandez, but he is not a party in this appeal.

kicked them in response. When the victim did not exit the truck, the chubbier gunman opened the backdoor of the truck and started shooting at the victim. The skinner gunman followed suit and began shooting as well. During the shooting, the victim was in the rear passenger seat of the truck. The medical examiner determined the victim had suffered 18 gunshot wounds, which included entry and exit wounds. He concluded the cause of death was multiple gunshot wounds and the manner of death was homicide.

Law enforcement responded to the crime scene. The victim was found dead. Officers also found 9 millimeter cartridge casings from a semiautomatic firearm and expended bullet fragments on the ground. There were bullet impacts to the rear, side windows, and body of the truck. A criminalist analyzed the truck and determined the pathways of the bullets. One bullet went through the bed of the truck. There were several bullets that entered the truck from the rear window and others coming from the right side exterior. A 9 millimeter cartridge casing was found in the side pocket of the door. A live 9 millimeter cartridge was found inside the center console of the truck. The criminalist noted that one bullet traveled from inside to the outside of the truck, from the back to the front. The criminalist opined that if the truck's door was open at the time, then someone from the outside of the vehicle could have shot into that portion, which would explain the trajectory of this particular bullet. She further stated that she found no evidence that would suggest there was someone shooting from inside the vehicle to the outside.

A gang expert testified about the Boyle Heights gang. The expert identified Hernandez as a member, known as "Scooby." Hernandez had various gang-related tattoos, including a large "B" for Boyle on his face. He also identified Lopez as a member of Boyle Heights. The expert further

3

testified about the White Fence gang and stated that Boyle Heights was its rival. White Fence had a larger territory and shared part of the southern border of Boyle Heights' territory. The victim had several White Fence gang-related tattoos. The murder occurred in White Fence territory and there was White Fence gang graffiti near the crime scene.

After the shooting, Hernandez posted a video on his Instagram account. In the video, he stated that he was in White Fence territory and to "check the scoreboard," which was a sports reference to the murder of a rival gang member. Hernandez said he was walking through a White Fence park wearing Boyle Heights' gang clothing. Hernandez was holding a handgun. Lopez was also seen on the video with Hernandez. Both Hernandez's and Lopez's gang tattoos were visible. There were various gang-related symbols displayed on Hernandez's Instagram account. There were photos of Hernandez and Lopez holding guns and making a hand symbol representing the Boyle Heights gang.

## PROCEDURAL HISTORY

A jury found Hernandez guilty of first degree murder (Pen. Code, § 187, subd. (a); count 1),[3] shooting at an occupied motor vehicle (§ 246; count 2), and assault with a semiautomatic firearm (§ 245, subd. (b); count 4).[4] As to count 1, the jury found true the firearm allegations under section 12022.53, subdivisions (b) through (d). As to count 2, the jury found true the firearm allegations under section 12022.5, subdivision (a) and section 12022.53,

---

[3] All further statutory references are to the Penal Code unless otherwise stated.

[4] Count 3 was not included in the information filed by the Los Angeles County District Attorney's Office.

4

subdivision (d).  As to count 4, the jury found true the firearm allegation under section 12022.5, subdivision (a).

The trial court sentenced Hernandez to 3 years plus 50 years to life in state prison, which consisted of the following.  The court imposed 25 years to life for count 1 plus a consecutive 25 years to life for the firearm enhancement under section 12022.53, subdivision (d), but struck the imposition of the remaining firearm enhancements (§ 12022.53, subds. (b), (c)).  The court stayed the imposition of the low term of three years for count 2 plus 25 years to life for the firearm enhancement (§ 12022.53, subd. (d)) under section 654, and struck the remaining gun enhancement (§ 12022.5, subd. (a)).  The court imposed the low term of three years for count 4 but struck the imposition of the firearm enhancement (§ 12022.5, subd. (a)).

Hernandez appealed.

## DISCUSSION

I.   *Jury Instructions*

A. *Perfect Self-Defense*

Hernandez argues the trial court committed prejudicial error by denying his request to instruct the jury with perfect self-defense as a defense to both the murder and shooting at an occupied motor vehicle charges.  We disagree.

"[Perfect] [s]elf-defense, when based on a reasonable belief that killing is necessary to avert an imminent threat of death or great bodily injury, is a complete justification, and such a killing is not a crime.  [Citations.]" (*People v. Elmore* (2014) 59 Cal.4th 121, 133–134, italics omitted.)  "For perfect self-defense, one must actually *and* reasonably believe in the necessity of defending oneself from imminent danger of death or great bodily injury.

5

[Citation.]" (*People v. Randle* (2005) 35 Cal.4th 987, 994, overruled on other grounds *by People v. Chun* (2009) 45 Cal.4th 1172.) "A trial court is required to instruct sua sponte on any defense, including self-defense, only when there is substantial evidence supporting the defense, and the defendant is either relying on the defense or the defense is not inconsistent with the defendant's theory of the case. [Citation.]" (*People v. Villanueva* (2008) 169 Cal.App.4th 41, 49.)

Here, there was no evidence Hernandez had a reasonable belief of imminent and immediate peril warranting a perfect self-defense instruction. There is no evidence that the victim threatened Hernandez (or Lopez) or initiated an altercation. Rather, Hernandez (and Lopez) approached the victim in rival gang territory, both with firearms in hand. They pointed their firearms at the victim and tried to forcibly remove him from the truck before opening fire, shooting him multiple times. It was Hernandez (and Lopez), not the victim, who initiated the deadly confrontation. Thus, there is simply no evidence in the record that Hernandez acted out of fear for his life or great bodily injury. (See *People v. Simon* (2016) 1 Cal.5th 98, 134 [defendant "initiated [the] aggressive interactions," the victim "was unarmed," defendant "did not testify," and "there is no evidence [defendant] ever told anyone that he had acted out of fear"].)

Hernandez's assertion that a round was fired by the victim inside the truck is mere conjecture. The criminalist acknowledged one bullet traveled from the interior of the truck through the exterior, back to front. She also opined that if the truck's door was open at the time, then someone from the outside of the vehicle could have shot into that portion, which would explain the trajectory of this particular bullet. According to the trial testimony, one of the gunmen opened the backdoor of the truck and began shooting the

6

victim. This evidence corroborates the criminalist's assessment. The criminalist further testified that she found no evidence that would suggest there was someone shooting from inside the vehicle. Moreover, no firearm was recovered from the victim. There was no eyewitness testimony of Hernandez brandishing a firearm, let alone testimony that he fired one. Neither Hernadez nor Lopez testified in their defense about such facts. It is also pure speculation by Hernandez that "people" at the scene may have removed evidence. We conclude the trial court did not err in denying Hernandez's request for a perfect self-defense instruction.

B. *Voluntary Manslaughter (Imperfect Self-Defense)*

Hernandez further argues the trial court committed prejudicial error by denying his request to instruct the jury on voluntary manslaughter as the lesser included offense of murder based on imperfect self-defense. We disagree.

A trial court must instruct on lesser included offenses whenever the evidence raises a question whether all the elements of the charged offense have been established and there is evidence of a lesser offense which is "'substantial enough to merit consideration' by the jury. [Citations.]" (*People v. Breverman* (1998) 19 Cal.4th 142, 162, disapproved of on other grounds in *People v. Schuller* (2023) 15 Cal.5th 237, 260, fn. 7.) In this context, substantial evidence means evidence from which a jury composed of reasonable persons could conclude that the lesser offense, but not the greater, was committed. (*Ibid.*) The lesser included offense instruction should be given only "where there is substantial evidence to support it." (*People v. Burns* (2009) 172 Cal.App.4th 1251, 1256, citing *People v. DePriest* (2007) 42 Cal.4th 1, 50.) Thus, "the trial court need not instruct on a lesser included

offense whenever any evidence, no matter how weak, is presented to support an instruction, but only when the evidence is substantial enough to merit consideration by the jury." (*People v. Barton* (1995) 12 Cal.4th 186, 195, fn. 4 (*Barton*).)  Instruction is not required "when the evidence is 'minimal and insubstantial.' [Citation.]" (*Id.* at p. 201.)  We apply a de novo standard of review.  (*People v. Waidla* (2000) 22 Cal.4th 690, 733.)

Imperfect self-defense is a description of one type of voluntary manslaughter.  (*Barton, supra*, 12 Cal.4th at pp. 200–201.)  ""'Under the doctrine of imperfect self-defense, when the trier of fact finds that a defendant killed another person because the defendant *actually*, but unreasonably, believed he was in imminent danger of death or great bodily injury, the defendant is deemed to have acted without malice and thus can be convicted of no crime greater than voluntary manslaughter." [Citation.]'" (*People v. Manriquez* (2005) 37 Cal.4th 547, 581.)

Like perfect self-defense, imperfect self-defense requires that "the fear must be of imminent harm." (*People v. Viramontes* (2001) 93 Cal.App.4th 1256, 1262; *People v. Humphrey* (1996) 13 Cal.4th 1073, 1082.)  As discussed in the previous section, there was no evidence of imminent danger of death or great bodily injury here.  Thus, the trial court did not err in not instructing the jury on imperfect self-defense for the same reason it did not have to instruct on perfect self-defense.

II.    *Firearm Enhancement*

As relevant here, Hernandez was charged with, and the jury found true, firearm allegations under section 12022.53, subdivisions (b), (c), and (d) for the first degree murder conviction.  At sentencing, Hernandez requested that the trial court strike the firearm enhancement under subdivision (d) of

8

that section, which carries an indeterminate term of 25 years to life. The court refused to do so and imposed the indeterminate sentence. The court then struck the imposition of the 10-year enhancement under subdivision (b) and the 20-year enhancement under subdivision (c) of section 12022.53. On appeal, Hernandez argues that the trial court was unaware of the scope of its discretion to select one of the two lesser firearm enhancements. We conclude the record does not support this view.[5]

"'Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court. [Citations.] A court which is unaware of the scope of its discretionary powers can no more exercise that "informed discretion" than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record.' [Citation.] In such circumstances, we have held that the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.'" (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391; accord, *People v. Flores* (2020) 9 Cal.5th 371, 431–432; *People v. Yanaga* (2020) 58 Cal.App.5th 619, 625.) However, "we presume that a judgment or order of the trial court is correct, "'[a]ll intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown."'" (*People v. Giordano* (2007) 42 Cal.4th 644, 666.) Furthermore, remand is not required when it would be

---

[5] In the interest of judicial efficiency, as we do not reach Hernandez's claim that the failure to argue the lesser terms under subdivisions (b) and (c) of section 12022.53 constituted ineffective assistance of counsel, we analyze the merits of Hernandez's argument without addressing the Attorney General's forfeiture argument. (*People v. Williams* (1998) 61 Cal.App.4th 649, 657, citing, e.g., *People v. Marshall* (1996) 13 Cal.4th 799, 831.)

an idle act.  (*People v. Flores, supra*, at p. 432, citing *People v. McDaniels* (2018) 22 Cal.App.5th 420, 425; accord, *People v. Jefferson* (2019) 38 Cal.App.5th 399, 409; *People v. Allison* (2019) 39 Cal.App.5th 688, 705–706.)

At the sentencing hearing, the court explained its reasoning for selecting this particular firearm enhancement.  The court laid out the prescribed sentence for subdivisions (b), (c), and (d) of section 12022.53.  The court then stated it "must work through two considerations: [(1)] whether to strike the gun enhancement; and [(2)] if the court decides not to strike the gun enhancement, how to impose that."  The court ultimately found that striking the firearm enhancement would endanger public safety and was not in the interests of justice.  The court said, "This type of coordinated and planned act of extreme violence through the use of a firearm destabilizes the sense of safety and security in our communities and is clearly the type of act the legislature had in mind when it enacted Penal Code section 12022.53.  In a case of this horrific magnitude of violence, . . . dismissal of the enhancement would clearly endanger public safety and is not in the interest of justice."

At the time of Hernandez's sentencing the law was clear about what would happen when "the jury had also returned true findings of the lesser enhancements under section 12022.53, subdivisions (b) and (c)."  (*People v. Morrison* (2019) 34 Cal.App.5th 217, 222.)  In such a case, the decision to strike an enhancement under section 12022.53, subdivision (d) "would leave intact the remaining findings, and an enhancement under the greatest of those provisions would be mandatory unless those findings were also stricken in the interests of justice."  (*People v. Morrison, supra*, at p. 222.)  There is no basis for inferring the trial court did not understand this mechanism, merely because it did not discuss it explicitly on the record.  Hernandez advances no argument that persuades us otherwise.  "In the absence of evidence to the

10

contrary, we presume that the court 'knows and applies the correct statutory and case law'" (*People v. Thomas* (2011) 52 Cal.4th 336, 361), and as stated, ""'error must be affirmatively shown'"" (*People v. Giordano, supra*, 42 Cal.4th at p. 666). In any event, the record reflects the court would impose the same enhancement even if we remand; its comments at sentencing make clear that it intended to impose the sentence it believed to be the maximum allowed under the current sentencing law. Remand would be an idle and unnecessary act. (*People v. Coelho* (2001) 89 Cal.App.4th 861, 889–890.)[6]

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ZUKIN, Acting P. J.

WE CONCUR:


COLLINS, J.


MORI, J.

---

[6] In his reply brief, Hernandez asserts for the first time that the trial court erred in denying his request to strike the firearm enhancement under section 12022.53, subdivision (d). We disregard this belated contention. (*People v. Clayburg* (2012) 211 Cal.App.4th 86, 93; *People v. Taylor* (2004) 119 Cal.App.4th 628, 642–643 [concluding that a defendant had forfeited a contention by raising it for the first time in a reply brief].).)

11