Filed 6/3/22  P. v. Cruz CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>       v.<br><br>RICARDO CRUZ,<br><br>    Defendant and Appellant. | G058494<br><br>(Super. Ct. No. 14NF4644)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Gregg L. Prickett, Judge.  Affirmed in part, reversed in part, and remanded for further proceedings.

Valerie G. Wass, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Annie Featherman Fraser, Deputy Attorneys General, for Plaintiff and Respondent.

Ricardo Cruz appeals from a judgment after a jury convicted him of second degree murder (count 1), the gang offense (count 2), possession of a firearm by a felon (count 3), and possession of a firearm in a school zone (count 4), and found true gang and firearm enhancements.  Cruz argues insufficient evidence supports his convictions, the trial court erred by admitting evidence, his equal protections rights were violated, the court erred in sentencing him, and the abstracts of judgment much be corrected.

While this appeal was pending, we invited the parties to file supplemental briefs on whether legislation effective on January 1, 2022, applies retroactively and, if so, their effect on this case.  Because we conclude, as does the Attorney General, the recent legislation applies retroactively, insufficient evidence supports count 2 and the gang enhancements.  Our conclusion requires we strike the 15-year minimum parole eligibility period.  Additionally, the recent legislation requires us to strike the sentences on counts 3 and 4, a point the Attorney General also concedes.

We reverse count 2 and the jury's true findings on the gang enhancements and strike the sentences on counts 3 and 4.  Our conclusion also forestalls having to address whether the abstracts must be corrected because new abstracts of judgment will be prepared after resentencing.  None of Cruz's other contentions have merit.  In all other respects, we affirm the judgment.

## FACTS[1]

Alfredo Aquino drove fellow gang member Cruz into rival gang territory.  When Aquino stopped the car, Cruz got out and fired a gun several times at men who he thought were rival gang members.  One of the bullets struck nine-year-old X.M., who was playing in front of her apartment with her two younger sisters.  When her Father

---

[1]  Because Cruz's appeal implicates the substantial evidence standard of review, we state the facts in the light most favorable to the judgment.  (*People v. Jennings* (2010) 50 Cal.4th 616, 638.)

2

began to run outside, X.M. walked through the front door holding her two younger sisters to protect them. X.M.'s father held his unresponsive and bleeding daughter as she passed away.

An information charged Cruz, and Aquino,[2] with the following: murder for a criminal street gang (Pen. Code, §§ 187, subd. (a), 186.22, subd. (b)(4), 190.2, subd. (a)(22), all further statutory references are to the Penal Code) (count 1); the gang offense (§ 186.22, subd. (a)) (count 2); possession of a firearm by a felon (§ 29800, subd. (a)(1)) (count 3); and possession of a firearm on school grounds (§ 626.9, subd. (b)) (count 4). As to count 1, the information alleged Cruz was a gang member who vicariously discharged a firearm causing death pursuant to section 12022.53, subdivisions (d) and (e)(1).[3] It also alleged he committed the offenses for a criminal street gang as to counts 3 and 4 (§ 186.22, subd. (b)(1)). Finally, the information alleged Cruz suffered a prior serious and violent felony conviction (§§ 667, subds. (d), (e)(1), 1170.12, subds. (b), (c)(1)), and a prior serious felony conviction (§ 667, subd. (a)(1)). The basis for the prior conviction allegations was a July 2014 conviction for possessing a billy (§ 22210) for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)), on October 29, 2013, when Cruz was 18 years old.

*I. Prosecution Evidence*

Surveillance video showed Aquino and 19-year-old Cruz leave an Internet café and get into a white car about 6 p.m. Surveillance video depicted and witnesses saw two Hispanic males in a white four-door car driving in the alley near West Greenacre Avenue (Greenacre) with its lights off about one hour later. Minutes later, witnesses saw

---

[2] Aquino's appeal is the subject of case No. G058777 filed contemporaneously with this appeal.

[3] The complaint alleged the identical allegation.

3

a white four-door car driving down Greenacre and stop near several males standing on the sidewalk near a park.

Andrew M. saw the male in the front passenger seat get out of the white car and heard him yell, "Where are you from?"  Melisa M. heard "Where are you from?" and another voice say, "It's mi barrio."  Andrew, David N., and Timothy P. saw the male outside of the car extend his arm, point a handgun at the men, and fire three or four shots in their direction.  Timothy described the man who fired the gun as a Latino who was wearing a black hooded sweatshirt, black baseball hat, blue jeans and had a mustache and goatee.  The man got back into the car, and the driver sped away.

One of the bullets struck and killed nine-year-old X.M.,[4] who was playing in front of her home with her two younger sisters and a friend.

Police officers discovered fresh "Folks" gang graffiti in the Greenacre alley, which was the claimed territory of the "Chicanos Kicking Ass" (CKA) criminal street gang.  CKA and Folks were rival gangs.

Sometime before 8:00 p.m., Aquino and Cruz arrived at Brenda A.'s apartment.  Aquino and Brenda had a child together.  Aquino asked Brenda to call Christian S., who lived on Greenacre, to retrieve his cell phone, which he had lost on the street.  At 7:52 p.m., Brenda called Christian, and he told her there were police in front of his house because a little girl had been shot.  After Brenda ended the call, she told Aquino a girl had been shot.

Aquino told Brenda he drove to CKA claimed territory looking to shoot someone from CKA because he had a "beef" with them and wanted to "bang."  Aquino previously told Brenda he was a member of Folks and had been "jumped in" by several guys.  Aquino said he got out of the car and shot at four people who were on the street by the apartments.  Aquino said he yelled out, "Folks," as he was shooting.  He added

---

[4]     The parties stipulated the forensic pathologist determined X.M. died from a single gunshot wound to her right chest area.

4

"another person" was firing at one person running towards the baseball fields. Aquino denied he shot the little girl. Later, he told Brenda that he was just shooting at one guy. Aquino asked Brenda to give him a ride home because he was afraid the police were looking for him.

Outside, Brenda saw Cruz wearing a black hooded sweatshirt and holding a spray paint can. Cruz went to the back of the apartment building where the trash cans were located. He returned without the sweatshirt or the spray paint can.

Brenda testified she walked with Aquino and Cruz to her car to take Cruz home. She sat in the driver's seat, Aquino sat in the front passenger seat, and Cruz sat in the back seat. Brenda loudly told them so they both could hear they were stupid "because there was a little girl that had gotten shot." She said Cruz did not respond.

After Brenda drove Cruz home, she drove Aquino to Greenacre to find his cellphone; there were police everywhere. She took Aquino to an Internet café.

Officers found three nine-millimeter casings later determined to be fired by the same gun. Detective Ryan Killeen took photographs of fresh Folks graffiti about 100 yards from the shooting.[5] Officers found a damaged cell phone on the street but Detective Julissa Trapp stated they were unable to extract its contents. Detective Bruce Linn went to the medical center to view X.M.'s body.

The day after the shooting, Breana A. saw Cruz and he was not "having a good day." She asked him what was wrong, and he said something happened but did not elaborate.

That same day, Brenda told Crystal N. about the shooting, and Crystal reported it to the police. Later that day, officers arrested Aquino when he was driving the same white car shown in the surveillance footage. The next day, officers arrested Cruz.

---

[5] Killeen testified he uploaded the photographs into the police computer system but they were lost.

He had deleted 483 text messages from his cell phone that were generated between the day of the shooting and two days later when officers arrested him.

Killeen testified as an expert on criminal street gangs. After detailing his background, training, and experience, he testified concerning the culture and habits of turf-oriented Hispanic criminal street gangs. Killeen testified concerning Folks, including its history, membership, claimed territory, symbols, and primary activities, which included felony vandalism and possession of a firearm. He also testified at length about the importance of respect to gang members and about the reputational benefit conferred on a gang when a gang member commits a murder or paints graffiti in rival gang territory. He explained gang members commit crimes with other gang members and each person has a role to play. Killeen stated firearms were important in gangs for protection and to commit crimes. He agreed firearms help gang members commit certain crimes. He explained gang members typically tell each other when they armed because of the following: "One is to let everybody know that there is a firearm amongst the group. One for protection; two, in case they go out and commit a crime, they're aware."

Killeen stated Folks and CKA were rivals, and the incident occurred in CKA claimed territory. He testified about the statutorily required predicate offenses. Based on his investigation and the facts of the case, he opined Aquino and Cruz were active participants in Folks at the time of the shooting. Based on a hypothetical rooted in the case's facts, Killeen opined the shooting was done for the benefit of and in association with a criminal street gang and to promote further criminal gang conduct because "it elevates . . . status." He added the driver benefited the gang and promoted further criminal gang conduct because it "absolutely" increased his status in the gang.

At the close of the prosecution's case-in-chief, Cruz moved for judgment of acquittal. After counsel argued, the trial court denied the motion.

6

*II. Defense Evidence*

Aquino testified he was 24 years old and he had known Cruz since the fifth grade. Aquino denied being a member of Folks, but admitted he had friends who were Folks gang members, had called out the Folks gang name, and spray painted Folks graffiti.

On the day of the incident, 20-year-old Aquino saw Cruz at the Internet café. Aquino asked Cruz if he wanted to go "cruising"—drive around and listen to music. Cruz agreed. Aquino drove and Cruz was in the front passenger seat. Cruz found a can of spray paint in the car and put it in his waistband. After driving around for about 10 minutes, Cruz told Aquino to take him home. When they got to Cruz's house, Cruz told Aquino to wait for him and he went inside. A few minutes later, Cruz got back into the car and told Aquino he "was packing." Aquino understood this to mean Cruz had a gun. Aquino did not tell Cruz to get out of the car because he wanted to be accepted and thought there would be serious consequences if he did. He thought they were going tagging and Cruz brought the gun for protection from rival gang members. Aquino knew driving into rival gang territory to spray paint graffiti could be dangerous.

On two occasions, Cruz told Aquino to drive to a particular neighborhood where he got out and spray painted the wall. Aquino stayed in the car looking for police. Aquino was worried about getting caught tagging and because "there [was] a gun in the car."

Cruz told Aquino to drive to CKA claimed gang territory. When they got to the area, Aquino drove through an alley, and Cruz told him to stop the car. Cruz got out, spray painted the wall, and got back in the car. Aquino turned onto Greenacre. Cruz told him to stop and got out of the car. Aquino noticed his seat belt was stuck in the door and opened the door. Aquino heard a shot and closed his door. He looked and saw Cruz "shoot the last shot." Aquino heard about three shots. Cruz got into the car, and Aquino drove away. Aquino realized his cell phone fell onto the street and told Cruz they had to

7

go back and get it. Cruz responded, "'Go, go, keep going.'" When he asked Cruz if he had shot anyone, Cruz replied, "'Don't say anything.'"

Aquino denied getting out of his car during the shooting, shouting "Folks," or asking anyone where they were from. Aquino did not see the gun until Cruz fired the third shot. Aquino drove to Brenda's house because her friend lived on Greenacre. When Brenda told him a little girl had been shot, Aquino told her that Cruz must have shot her. Aquino admitted he had told Brenda he had gotten out of the car and fired a gun but said that was a lie because he wanted to impress Brenda. Aquino did not remember Brenda telling him and Cruz they were stupid because they had shot a young girl. Aquino denied knowing Cruz intended to kill anyone and he denied shooting X.M.

At the close of evidence, after counsel argued, the trial court denied Cruz's renewed motion for judgment of acquittal.

III. *Verdicts & Sentencing*

At the beginning of the prosecutor's closing argument, as relevant here, he stated jurors had a "unique" and "heavy burden" in weighing and understanding the evidence of two very different worlds where children play in gang claimed territory. The prosecutor added, "[t]hese photographs do not belong together in any way."

The jury acquitted Cruz of first degree murder and convicted him of second degree murder. As to that count, the jury found true the gang and *personal* use of a firearm allegations and found not true the *vicarious* use of a firearm allegation. The jury convicted him of the remaining counts and found true the gang enhancement allegations.

At a bifurcated bench trial, the trial court found true the prior conviction allegations. Cruz pleaded guilty to assault with a deadly weapon in case No. 17NF01911. The court denied Cruz's motion pursuant to section 1385 and *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

The trial court sentenced Cruz to a determinate term of 15 years—10 years on count 3 (upper term of three years doubled to six years plus four years for the gang enhancement) and five years for the prior serious felony conviction. The court also sentenced him to an indeterminate term of 55 years to life on count 1—15 years to life doubled to 30 years to life plus 25 years for the personal use of a firearm. The court imposed a minimum parole eligibility period of 15 years pursuant to section 186.22, subdivision (b)(4), (5). As to counts 2 and 4, the court struck the strike conviction, imposed upper term sentences, and stayed the sentences.[6] In imposing upper terms, the court relied on the fact X.M. was a vulnerable and innocent child playing in front of her home and there were other innocent people nearby at the park and there was some planning.

## DISCUSSION

### I. Sufficiency of the Evidence

"'When reviewing a challenge to the sufficiency of the evidence, we ask "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" [Citation.] Because the sufficiency of the evidence is ultimately a legal question, we must examine the record independently for "'substantial evidence— that is, evidence which is reasonable, credible, and of solid value'" that would support a finding beyond a reasonable doubt.' [Citation.] In doing so, we 'view the evidence in the light most favorable to the jury verdict and presume the existence of every fact that

---

[6] The parties agree the court intended to impose the upper term on count 4. The abstract of judgment indicates the court imposed the upper term. However, the court sentenced Cruz to "the upper term of four years and doubles that to eight years." The upper term for violating section 626.9, subdivision (b), is five years. (§ 626.9, subd. (f).) Below we explain why recent legislation requires us to remand for resentencing. On remand, the court may resentence on count 4.

9

the jury could reasonably have deduced from that evidence.' [Citation.] 'We must also "accept logical inferences that the jury might have drawn from the circumstantial evidence."' [Citation.] We do not question the credibility of a witness's testimony, so long as it is 'not inherently improbable,' nor do we reconsider the weight to be given any particular item of evidence. [Citation.]" (*People v. Navarro* (2021) 12 Cal.5th 285, 302 (*Navarro*).)

## A.  Motion for Judgment of Acquittal

Cruz argues the trial court erred by denying his motion for judgment of acquittal.  We disagree.

"When a trial court rules on a motion for a judgment of acquittal under section 1118.1, the standard the trial court must apply is the same as what the appellate court applies when reviewing the sufficiency of the evidence supporting [a] conviction. A section 1118.1 motion is used to cull the '"'few instances in which the prosecution fails to make even a prima facie case.'"' [Citation.]  A court resolves a section 1118.1 motion by determining whether the prosecution presented sufficient evidence, measured from the moment the section 1118.1 motion is made, to permit the jury to resolve the issue. [Citation.]  We review the trial court's determination de novo.  [Citation.]" (*People v. Wilson* (2021) 11 Cal.5th 259, 301.)

Here, there was sufficient evidence Cruz was in the car with Aquino and Cruz was the shooter.  Aquino and Cruz were Folks gang members, and Folks's rival was CKA.

Surveillance video showed Cruz and Aquino at an Internet café near the location of the shooting from about 5:53 p.m. to about 6:03 p.m.  They left the café, got into a white car, and drove away.  Surveillance video showed Aquino's car driving in an alley in CKA claimed territory in the dark with its headlights off at about 7:11 p.m. Approximately 100 yards away, there was fresh Folks graffiti.  At 7:13 p.m., witnesses

10

heard someone say "Where are you from?" and saw the passenger in Aquino's car shooting toward a group of males.

At 7:38 p.m., surveillance video showed Cruz and Aquino back at the café. At 7:52, Aquino and Cruz were at Brenda's house where Aquino asked Brenda to call Christian to retrieve his cell phone, which he dropped at the location of the shooting. When Cruz arrived at Brenda's house, he was wearing a black hooded sweatshirt and had a spray paint can before briefly disappearing and returning without them. When Brenda told Aquino and Cruz that they were stupid because a little girl had been shot, Cruz did not respond or deny it. The next day, Cruz, who appeared unhappy, told Breana something had happened. Finally, the jury knew that about three months before the shooting, Aquino and Cruz suffered a conviction for possessing a prohibited weapon.

This was substantial evidence from which the jury could conclude Cruz was in Aquino's car and was the shooter. Particularly compelling was the fact Cruz was with Aquino and in his car about 70 minutes before the shooting and with Aquino at the Internet café 25 minutes after the shooting. To credit Cruz's theory, the jury would have had to believe Aquino dropped off Cruz and picked up another Folks gang member before the shooting and dropped off the other Folks gang member and picked up Cruz after the shooting before going to the café. Not only was Cruz with Aquino before and after the shooting, but both were Folks gang members, Aquino's car was in CKA claimed territory, and witnesses heard a gang challenge at the time of the shooting.

There was additional evidence Cruz was the shooter. After Aquino and Cruz left the Internet café, they went to Brenda's house to help Aquino retrieve his cell phone from near the shooting. Obviously, the cell phone would incriminate Aquino, but it would also point officers in Cruz's direction. Three months earlier, they suffered a conviction for possessing a prohibited weapon. Both Aquino and Cruz were to benefit if Aquino retrieved his cell phone before officers found it. Cruz's conduct at Brenda's home demonstrated a consciousness of guilt. The jury could reasonably conclude Cruz

11

discarded his black hooded sweatshirt and spray paint can. Timothy described the shooter as wearing a black hooded sweatshirt. Killeen stated there was fresh Folks graffiti 100 yards from the location of the shooting—Cruz was a Folks gang member and Brenda said he had a can of spray paint less than 30 minutes after the shooting. Additionally, when Brenda essentially accused Aquino and Cruz of killing a little girl, Cruz did not respond. A reasonable *innocent* person would have denied any involvement in such a heinous act. Not only did he not respond, but the next day an unhappy Cruz told Breana something had happened. Contrary to Cruz's claim this was only circumstantial evidence he had knowledge of the shooting, it was also circumstantial evidence Cruz was the shooter and he was trying to eliminate any evidence connecting him to the crime.

Cruz notes there was no firearm or ballistic evidence, DNA evidence, or cell phone records connecting him to the shooting. True. But our role is to determine whether the evidence that did exist was sufficient, not to focus on evidence that was lacking. (*People v. Story* (2009) 45 Cal.4th 1282, 1299.)

Cruz contends there were discrepancies between the surveillance video showing him wearing a black hooded sweatshirt with a white circular logo and other evidence, i.e., Timothy's description of the shooter wearing a *plain* black hooded sweatshirt and Brenda's testimony he wore a black sweatshirt. As support for this assertion, Cruz cites to the following pages of the reporter's transcript: 807-808 (Detective Julissa Trapp); 1230-1231 (Aquino); and 1251-1252 (Aquino).

We cannot consider Aquino's testimony concerning what Cruz wore because that was not part of the prosecution's case-in-chief. Trapp testified concerning five still images (Exhibit Nos. 48, 49, 50, 51 52) taken from the Internet café surveillance video. Trapp identified Cruz in the photographs but she never described Cruz as wearing a black sweatshirt. Cruz also cites to exhibit No. 50, a photograph the prosecutor showed Trapp, to support his assertion. But Cruz did not transmit that exhibit to this court. (Cal.

12

Rules of Court, rule 8.224(a)(1) & (a)(3).) Assuming exhibit No. 50 depicted him wearing a black hooded sweatshirt with a white circular logo, it is the trier of fact's exclusive province, not ours, to resolve inconsistencies or conflicts in the testimony. (*People v. Gomez* (2018) 6 Cal.5th 243, 281.) The jury knew Aquino was the father of Brenda's child and it could consider that factor in assessing her credibility. Neither Timothy's nor Brenda's testimony was patently false or inherently improbable. (*Ibid*.)

Cruz also claims there was a discrepancy between Timothy's description of the shooter having a mustache and goatee and exhibit No. 47, a photograph of Cruz when he was arrested two days after the shooting.[7] We have viewed exhibit No. 47. Cruz has a faint mustache and goatee.

Finally, Cruz claims the prosecution realized its case against him was weak because it did not charge him with personally discharging a firearm. Although the information alleged vicarious discharge of a firearm causing death, the information did cite to section 12022.53, subdivision (d), the personal use of a firearm allegation. Based on the above evidence, the trial court properly denied Cruz's motion for judgment of acquittal.

### B. Convictions

#### 1. Offenses Generally

Cruz asserts insufficient evidence supports his convictions because Aquino's testimony was not sufficiently corroborated and it was inherently improbable. Not so.

"[F]or the jury to rely on an accomplice's testimony about the circumstances of an offense, it must find evidence that "'without aid from the accomplice's testimony, tend[s] to connect the defendant with the crime."' [Citations.] 'The entire conduct of the parties, their relationship, acts, and conduct may be taken into

---

[7] The Attorney General requested exhibit No. 47 be transmitted to this court.

13

consideration by the trier of fact in determining the sufficiency of the corroboration.' [Citations.] The evidence 'need not independently establish the identity of the victim's assailant' [citation], nor corroborate every fact to which the accomplice testifies [citation], and '"may be circumstantial or slight and entitled to little consideration when standing alone"' [citation]. 'The trier of fact's determination on the issue of corroboration is binding on the reviewing court unless the corroborating evidence should not have been admitted or does not reasonably tend to connect the defendant with the commission of the crime.' [Citation.]" (*People v. Romero and Self* (2015) 62 Cal.4th 1, 32-33.)

In his opening brief, Cruz states, "Although certain aspects of Aquino's testimony were corroborated by the surveillance video and [Brenda's] statements and testimony, his contention that [Cruz] was in the car on Greenwood and participated in the shooting was not corroborated." Because the corroborating evidence need only be slight and not corroborate every fact, Cruz's admission could end our inquiry. His attempt to walk back his admission in his reply brief by asserting Aquino's testimony "was not *sufficiently* corroborated" fails (italics added).

Aquino testified Cruz was the shooter. Aquino's testimony he and Cruz were at the Internet café before the shooting, returned to the café after the shooting, and went to Brenda's house was corroborated by the café's video surveillance and Brenda's testimony. Aquino's testimony Cruz spray painted Folks gang graffiti near the scene of the shooting was corroborated by Killeen's testimony he saw fresh Folks graffiti 100 yards from the location of the shooting. This was sufficient circumstantial evidence corroborating Aquino's testimony Cruz was the shooter. (*People v. Avila* (2006) 38 Cal.4th 491, 569 [sufficient independent evidence corroborating accomplice's testimony].) Cruz claims Aquino's and Brenda's testimony was inherently improbable and asks this court to discount it. We disagree, and again remind Cruz we cannot

14

reweigh the evidence. (*Navarro, supra,* 12 Cal.5th at p. 302.) Sufficient evidence supported Cruz's convictions.

*2. Gang Offense & Enhancements*

In his opening brief, Cruz argues insufficient evidence supported the gang offense and enhancements because evidence Folks was a criminal street gang was lacking. In the supplemental briefing, Cruz adds, and the Attorney General concedes, Assembly Bill No. 333 (AB 333) applies retroactively and thus the section 186.22 offense and enhancements must be reversed and the matter remanded because the jury was not asked to and thus did not make the newly required factual determinations.

The California Street Terrorism Enforcement and Prevention Act (§ 186.20 et seq.) created a substantive offense of active participation "in a criminal street gang" (§ 186.22, subd. (a)), and a sentencing enhancement for a felony committed "for the benefit of, at the direction of, or in association with a criminal street gang" (§ 186.22, subd. (b)(1)). (See *People v. Valencia* (2021) 11 Cal.5th 818, 829.) To establish a gang is a "criminal street gang," the prosecution must prove that the gang has as one of its "primary activities" the commission of one or more of the crimes enumerated in section 186.22, subdivision (e), and that it has engaged in a "'pattern of criminal gang activity'" by committing two or more such predicate offenses. (§ 186.22, subds. (e), (f).)

AB 333 made substantial revisions to section 186.22 effective January 1, 2022. We need not detail all those changes here—a couple will suffice.

AB 333 modified the definition of "'criminal street gang'" (§ 186.22, subd. (f)), to mean "an ongoing, organized association or group of three or more persons," "having as one of its primary activities the commission of one or more of the [enumerated] criminal acts," "having a common name or common identifying sign or symbol," and "whose members collectively engage in, or have engaged in, a pattern of criminal gang activity." It narrows the list of permissible predicate offenses by removing inter alia felony vandalism. (See § 186.22, subd. (e)(1).)

15

AB 333 also modified the definition of "'pattern of criminal gang activity'" (§ 186.22, subd. (e)), to require that (1) the last offense used to show a pattern of criminal gang activity "occurred within three years of the prior offense and within three years of the date the current offense is alleged to have been committed"; (2) "the offenses were committed on separate occasions or by two or more members," as opposed to "persons"; and (3) "the offenses commonly benefitted a criminal street gang," and the common benefit was "more than reputational."

The parties agree AB 333 applies retroactively to Cruz. Courts of Appeal that have considered the issue have concluded AB 333 applies retroactively where, as here, a defendant's conviction was not final before the amendments took effect. (*People v. Sek* (2022) 74 Cal.App.5th 657, 667 (*Sek*); *People v. Lopez* (2021) 73 Cal.App.5th 327, 343-344.) We agree with this well-reasoned authority and conclude AB 333 applies retroactively to Cruz's case because judgment was not final as of January 1, 2022. (*In re Estrada* (1965) 63 Cal.2d 740, 748 [statutory changes that reduce punishment for a crime apply retroactively to all judgments not yet final on statute's effective date].)

The parties also agree Cruz's conviction for count 2 and the gang enhancements as to counts 1, 3, and 4 must be reversed. Cruz asserts, and the Attorney General agrees, felony vandalism was one of the crimes used to establish Folks's primary activities. AB 333 made that impermissible. Additionally, they also agree the offenses' benefit to Folks was limited to reputation. That too is now impermissible pursuant to AB 333. (See § 186.22, subd. (g) [benefit must be financial, retaliation, targeting gang rival, or witness intimidation].)

As section 186.22 now requires, there was no evidence Folks was a criminal street gang or the offenses benefitted the gang. Accordingly, the evidence adduced at trial to prove a criminal street gang itself is no longer valid. The existence of a criminal street gang is a prerequisite to proving the gang offense (§ 186.22, subd. (a)),

16

and the gang enhancements (§ 186.22, subd. (b)(1)).  (§ 186.22, subd. (f); *People v. Vasquez* (2016) 247 Cal.App.4th 909, 922.)

We reverse Cruz's conviction for count 2 and the jury's true findings on the gang allegation (§ 186.22, subd. (b)(4)) as to count 1, and the gang allegations as to counts 3 and 4 (§ 186.22, subd. (b)(1)).  We agree with the parties the prosecution may seek to retry the gang offense and enhancements.

In *Sek, supra,* 74 Cal.App.5th at page 669, the court faced the identical issue.  It stated the following:  "Our decision does not bar the prosecution from retrying [defendant] on the gang enhancements upon remand.  'Because we do not reverse based on the insufficiency of the evidence required to prove a violation of the statute as it read at the time of trial, the double jeopardy clause of the Constitution will not bar a retrial. [Citations.]  "'Where, as here, evidence is not introduced at trial because the law at that time would have rendered it irrelevant, the remand to prove that element is proper and the reviewing court does not treat the issue as one of sufficiency of the evidence.' [Citation.]" [Citation.]' [Citations.]"  We agree with the *Sek* court and conclude the prosecution can retry Cruz on the gang offense and enhancements.  We remand the matter for further proceedings consistent with this opinion.

II.  *Admission of Evidence*

A.  *Adoptive Admission*

Cruz contends the trial court erred by admitting Brenda's statement as an adoptive admission.  Again, we disagree.

1.  *Background*

Before trial, the prosecution filed an in limine motion to admit evidence Brenda told Aquino and Cruz "they were stupid and that they killed a little girl" and neither denied the accusation or responded in any manner as an adoptive admission.  At a hearing during a preliminary discussion of the prosecution's motions, Cruz's trial counsel

17

stated, "It would, obviously, depend entirely on [Brenda] testifying to these statements and me being able to cross-examine at trial."

When they addressed the issue the next day, the prosecutor stated Brenda's statements on this issue were inconsistent but a reasonable person would deny or respond. Cruz's trial counsel said the following: "I'm fully aware of what the alleged statement is. I believe it's a jury issue. If and when she testifies as to that, then I'll address it." The trial court ruled Brenda's statement was admissible.

A little later Aquino's trial counsel inquired whether the court would sanitize the adoptive admission. After the court said no, it asked Cruz's trial counsel whether that was his understanding. Counsel stated the following: "No, [y]our [h]onor. In fact, . . . whether or not the statement would even constitute an adoptive admission as far as . . . Cruz is concerned would actually depend entirely on the circumstances because I believe that the evidence is that . . . Cruz is not privy to 99 percent of the conversation that [Brenda] is having with . . . Aquino, if not until some point where she is now in . . . Cruz's immediate presence that she makes the statement to which the [prosecution] would argue a person would in a normal circumstance respond to." After the court agreed, counsel added the following: "The context is absolutely critical. I couldn't imagine that we would be able to arrive at an argument that it would constitute [an] adoptive admission without the context being part of the evidence in the first place." The court stated they had addressed the issue the prior day and moved on.

At trial, Brenda testified she walked with Aquino and Cruz to her car to take Cruz home. She sat in the drivers' seat, Aquino sat in the front passenger seat, and Cruz sat in the back seat. Brenda loudly told them so they both could hear that they were stupid "[b]ecause there was a little girl that had gotten shot." She said Cruz did not respond.

18

During cross-examination, Cruz's trial counsel asked Brenda if Cruz was in the car when she said they were stupid because they shot a young girl. Brenda said Cruz was in the car, but she did not direct the statement to him. In the rearview mirror, she could see he was looking at his cell phone and not participating in the conversation. Brenda was sure she made the statement while they were in the car. After counsel refreshed her recollection with her statement to a detective that she made the comment while walking to her car, Brenda stated, "I don't remember at what point I said it, but I did." When counsel said he was trying to determine whether Cruz was within earshot when she made her statement, Brenda answered, "He was[]" and "he was near the car." She repeated, "I don't remember what point I said it, but he was there."

During argument on both of Cruz's motions for judgment of acquittal, his trial counsel asserted there was insufficient evidence to establish Brenda actually made the statement. During a discussion concerning jury instructions, the trial court addressed CALCRIM No. 357, "Adoptive Admissions." Cruz's trial counsel stated, "It's a jury issue. I don't have any objection to that extent." Later, the trial court instructed the jury with CALCRIM No. 357.

2. *Law*

Under Evidence Code section 1221, a statement offered against a party is not inadmissible hearsay if the party manifests his or her adoption of the statement, with knowledge of the content of the statement. (*People v. Carter* (2003) 30 Cal.4th 1166, 1196 (*Carter*).) "'In determining whether a statement is admissible as an adoptive admission, a trial court must first decide whether there is evidence sufficient to sustain a finding that: (a) the defendant heard and understood the statement under circumstances that normally would call for a response; and (b) by words or conduct, the defendant adopted the statement as true.' [Citation.] 'For the adoptive admission exception to the hearsay rule to apply, no "direct accusation in so many words" is necessary. [Citation.] Rather, it is enough that the evidence showed that the defendant participated in a private

19

conversation in which the crime was discussed and the circumstances offered him the opportunity to deny responsibility or otherwise dissociate himself from the crime, but that he did not do so.' [Citation.]" (*People v. Charles* (2015) 61 Cal.4th 308, 322-323 (*Charles*).) In other words, an evasion or silence is a typical reply for such an admission. (*Id.* at pp. 322-323.)

"'"We review the trial court's conclusions regarding foundational facts for substantial evidence. [Citation.] We review the trial court's ultimate ruling for an abuse of discretion [citations], reversing only if "'the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.'"' [Citation.]" (*Charles, supra,* 61 Cal.4th at p. 322.)

It falls within the trial court's sound discretion to instruct the jury on adoptive admissions. (*People v. Carter* (2003) 30 Cal.4th 1166, 1198.) "'""It is an elementary principle of law that before a jury can be instructed that it may draw a particular inference, evidence must appear in the record which, if believed by the jury, will support the suggested inference [citation]." [Citation.]' [Citation.]" (*People v. Alexander* (2010) 49 Cal.4th 846, 920-921 (*Alexander*).)

*3. Analysis*

Preliminarily, we agree with the Attorney General that Cruz forfeited appellate review of this issue for failing to object to admission of Brenda's statement or object to the trial court instructing the jury with CALCRIM No. 357. (*People v. Maciel* (2013) 57 Cal.4th 482, 531 [defendant's failure to object to admission of evidence generally forfeits appellate review]; *People v. Virgil* (2011) 51 Cal.4th 1210, 1260 [defendant's failure to object to jury instruction generally forfeits appellate review].)

From the outset, Cruz's trial counsel stated he had to hear her testimony for context and it was for the jury to decide. When Brenda testified on this issue, counsel did not object. Instead, he thoroughly cross-examined her on where they were when she made the statement, how close she was to Cruz, and whether he was participating in the

20

conversation. Additionally, counsel did not object to the trial court instructing the jury with CALCRIM No. 357.

Cruz claims this contention is not forfeited because any objection would have been futile based on controlling law, the instruction affected his substantial rights, and his trial counsel was ineffective for failing to object. Because Cruz asserts ineffective assistance of counsel, we address the merits. (*People v. Williams* (1998) 61 Cal.App.4th 649, 657 [addressing claim's merits despite forfeiture because defendant asserted ineffective assistance of counsel].)

Here, the record includes evidence from which to infer Cruz heard Brenda's statement and adopted her statement as true. Brenda told Aquino and Cruz they were stupid because "there was a little girl that had gotten shot." She insisted her statement was loud enough for them to hear. Cruz did not respond, deny it, or shake his head. A reasonable person accused of killing a child would assuredly deny the statement if it were not true. Cruz had the opportunity to deny his involvement, but he failed to do so. Thus, the trial court's conclusion concerning the foundational facts was supported by sufficient evidence. Additionally, the court's decision to admit the statement was not patently absurd because evidence he had the opportunity to deny involvement in the crime and failed to do so was certainly relevant.

Because there was sufficient evidence from which the jury could reasonably infer Cruz heard Brenda's statement and adopted her statement as true, the trial court did not err by instructing the jury with CALCRIM No. 357.[8] His related claim the court should have instructed the jury to disregard Brenda's statement deserves little response. Aside from the fact he did not request such an instruction, it would have only confused the jury how to consider this evidence. If Cruz did not want the jury to consider

---

[8]     Cruz does not contend CALCRIM No. 357 was legally erroneous.

21

this evidence, his trial counsel should have objected at the outset. He did not because he knew it was an issue for the jury to decide.

Finally, Cruz claims Brenda made conflicting statements about where she was when she made the statement, she lacked credibility, and Aquino did not corroborate her statement. Once the trial court determines there was evidence supporting the foundational facts, it was for the jury to decide whether Cruz's conduct constituted an adoptive admission. (*People v. Edelbacher* (1989) 47 Cal.3d 983, 1011.) Because the court did not err by instructing the jury with CALCRIM No. 357, we need not address whether he was prejudiced.

B. *Forensic Photograph*

Cruz asserts the trial court erred by admitting exbibit No. 69. He is mistaken.

1. *Background*

Before Detective Bruce Linn's testimony, Aquino's trial counsel objected to admission of two autopsy photographs of X.M. because they had little, if any, probative value, and they were unduly prejudicial. One photograph showed the bullet entry wounds, and the other the bullet exit wound. The prosecutor argued the photographs were relevant to corroborate witness testimony and show the shooter fired diagonally. The court did not believe the photographs showed the angle. The prosecutor explained the photographs did not show X.M.'s body and he chose the least inflammatory photographs. The court denied the prosecutor's request to publish the photographs but reserved ruling on their admissibility.

Linn testified he observed X.M.'s body. She had an entrance bullet wound on the right abdomen area and an exit bullet wound on the left side of the abdomen. The prosecutor showed Linn two photographs. Linn stated one was a close-up photograph of the entrance bullet wound on her body (exhibit No. 69), and the other was a close-up

22

photograph of the exit bullet wound on the other side of her body (exhibit No. 70). The two photographs were not published to the jury during Linn's testimony.

After the close of evidence when discussing the prosecutor's exhibits, Aquino's trial counsel objected to admission of exhibit Nos. 69 and 70. Cruz's trial counsel joined in the objection. The prosecutor argued the photographs were relevant to show the crime occurred and the wound locations, and he was not required to put on "an overly-sanitized version of the case."

After the trial court indicated it would admit the photograph showing the entry bullet wound, Aquino's trial counsel argued that excluding both photographs would not result in an "overly-sanitized representation of what happened." Counsel noted he did not object to much inflammatory evidence, including X.M.'s father's testimony out of respect. He reminded the court the parties stipulated to X.M.'s cause of death and there was testimony about the gunshot wounds. He asserted showing "a hole in the chest of a nine-year-old girl" would be so inflammatory and prejudicial it would outweigh the minimal probative value. Cruz's trial counsel joined in co-counsel's argument and noted the stipulation.

The next day, the trial court noted Cruz and Aquino objected to admission of exhibit Nos. 69 and 70 on relevance and Evidence Code section 352 grounds. The court opined the photographs were cumulative to each other, but not "to all the other evidence that under 210 of the Evidence Code." The court added "[a]nd doing a 352 balancing, the court believes that the greater number of factors that weigh in favor of admission[]" of exhibit No. 69[9] but not exhibit No. 70. When asked, the court said the prosecutor could show exhibit No. 69 photograph during closing argument, which the record implicitly supports the conclusion he did.

---

[9] The Attorney General requested exhibit No. 69 be transmitted to this court.

23

*2. Law & Analysis*

"'This court is often asked to rule on the propriety of the admission of allegedly gruesome photographs. [Citations.] At base, the applicable rule is simply one of relevance, and the trial court has broad discretion in determining such relevance. [Citation.] "'[M]urder is seldom pretty, and pictures, testimony and physical evidence in such a case are always unpleasant'" [citation], and we rely on our trial courts to ensure that relevant, otherwise admissible evidence is not more prejudicial than probative [citation]. A trial court's decision to admit photographs under Evidence Code section 352 will be upheld on appeal unless the prejudicial effect of such photographs clearly outweighs their probative value.' [Citation.] 'In a prosecution for murder, photographs of the murder victim and the crime scene are always relevant to prove how the charged crime occurred . . . .' [Citation.] The prosecution is not obliged to prove its case solely from the testimony of live witnesses; 'the jury is entitled to see details of the victims' bodies to determine if the evidence supports the prosecution's theory of the case.' [Citation.]" (*People v. Scully* (2021) 11 Cal.5th 542, 590 (*Scully*).)

""'To determine whether there was an abuse of discretion, we address two factors: (1) whether the photographs were relevant, and (2) whether the trial court abused its discretion in finding that the probative value of each photograph outweighed its prejudicial effect."' [Citation.]" (*Scully, supra,* 11 Cal.5th at p. 590.)

Here, the trial court's ruling to admit exhibit No. 69 was not an abuse of discretion. Despite the stipulation as to X.M.'s cause of death, exhibit No. 69, which we have viewed, showing only X.M.'s front right torso area with a single bullet wound and some stitches was relevant so the jury could determine whether the evidence supported the prosecution's theory of the case. Additionally, the relevance of exhibit No. 69 was not clearly outweighed by its prejudicial effect. Again, exhibit No. 69 shows only X.M.'s torso area. It does not show her face. Having examined exhibit No. 69, we conclude it is

24

relevant and it is not "'of such a nature as to overcome the jury's rationality.'" (*People v. Lewis* (2009) 46 Cal.4th 1255, 1282.)

Cruz complains the trial court did not articulate why exhibit No. 69 was relevant. "[A] trial court need not expressly weigh prejudice against probative value, or even expressly state it has done so. All that is required is that the record demonstrate the trial court understood and fulfilled its responsibilities under Evidence Code section 352." (*People v. Williams* (1997) 16 Cal.4th 153, 213.) Here, the trial court's comments and reference to Evidence Code section 352 support the conclusion it weighed the evidence's probative value against its prejudicial effect.

Cruz relies on *People v. Marsh* (1985) 175 Cal.App.3d 987, 997-998 [photographs of two-year-old child beaten to death and skull removed during autopsy], and *People v. Smith* (1973) 33 Cal.App.3d 51, 69 (*Smith*) [photographs of female victim's semi-nude mutilated corpse],[10] to assert exhibit No. 69 was unduly inflammatory. Needless to say, the single photograph of X.M.'s chest with a single bullet wound and stitches paled in comparison to the photographs in those cases. Thus, the trial court's ruling admitting exhibit No. 69 was not an abuse of discretion. Because the court did not abuse its discretion, we need not address whether Cruz was prejudiced.

III. *Section 12022.53*

Cruz argues his due process rights were violated because he did not have notice of the section 12022.53, subdivision (d), enhancement allegation and the trial court imposed an unauthorized sentence. Because the complaint and information alleged section 12022.53, subdivision (d), there was no due process violation.

---

[10] *Smith* was overruled on other grounds in *People v. Wetmore* (1978) 22 Cal.3d 318, 325, fn. 5, 327, fn. 7.

*A. Background*

As to count 1, the complaint alleged that "pursuant to . . . section[] 12022.53[, subdivisions] (d) and (e)(1) (gang member vicarious discharge firearm causing death) . . . Cruz and . . . Aquino [were] . . . principal[s] in the commission of a felony . . . and . . . during the commission [of that felony] another principal intentionally discharged a firearm causing [the] death" of X.M. At the preliminary hearing, the trial court held them to answer on all charges and enhancements, including "the 12022.53 (d) and (e)" allegation. The information charged the identical firearm enhancement allegation.

During a discussion on jury instructions, the trial court asked if there was any objection to CALCRIM No. 1402, "Gang-Related Firearm Enhancement." Cruz's trial counsel said he did not object. The court said, "I will add subdivision [(d)] up at the top because I'll be giving the [e] - - the - - I think this is the [(e)]. . . . And I will be adding the subdivision [(d)](1). And it will also include 12022.53[, subdivision] (a)." Cruz's trial counsel did not object.

The trial court instructed the jury with CALCRIM No. 1402 and included in the header "(Penal Code § 12022.53(d))." On its own motion, the court also instructed the jury with CALCRIM No. 3149, "Personally Discharging Firearm: Intentional Discharge Causing Death (Pen. Code, § 12022.53(d))."

The jury convicted Cruz of second degree murder and found true he personally and intentionally discharged a firearm causing death pursuant to section 12022.53, subdivision (d). The jury found it not true Cruz was a principal and that another principal intentionally discharged a firearm causing death pursuant to section 12022.53, subdivision (e). In convicting Aquino of second degree murder, the jury reached opposite findings on the firearm enhancements.

26

After the trial court read the verdicts and a juror asked for a readback on count 1 as to Cruz, it was discovered the jury did not complete a verdict form for first degree murder. The court returned the verdict forms to the jury, and they returned to the deliberation room.

A little later, the jury requested clarification on the firearm enhancement as to Cruz. The jury asked, "Are we interpreting this correctly—if we believe . . . Cruz was a principal and was the only principal who discharged a firearm then we are to mark 'not true,'" on the fourth paragraph of count 1. The court conferred with counsel, agreed on a response, brought the jury back in, and answered the question. The jury returned to the deliberation room and reached the same verdicts, which the court read again.

B. *Law & Analysis*

"As a rule, all sentence enhancements 'shall be alleged in the accusatory pleading and either admitted by the defendant in open court or found to be true by the trier of fact.' [Citations.] Firearm enhancements under section 12022.53[] are no exception to this rule. Another statutory pleading provision, specific to section 12022.53 enhancements, restates the same basic point: For any of the firearm enhancements prescribed by section 12022.53 to apply, 'the existence of any fact required [by the relevant provision] shall be alleged in the accusatory pleading and either admitted by the defendant in open court or found to be true by the trier of fact.' [Citations.]" (*People v. Anderson* (2020) 9 Cal.5th 946, 953 (*Anderson*).)

"Beneath all three statutory pleading requirements lies a bedrock principle of due process. '"No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal." [Citations.] "A criminal defendant must be given fair notice of the charges against him in order that he may have a reasonable opportunity properly to prepare a defense and avoid unfair surprise at trial."'

27

[Citation.] This goes for sentence enhancements as well as substantive offenses: A defendant has the 'right to fair notice of the specific sentence enhancement allegations that will be invoked to increase punishment for his crimes.' [Citation.]" (*Anderson, supra,* 9 Cal.5th at p. 953.)

Preliminarily, we agree with the Attorney General that Cruz forfeited appellate review of whether he received notice of the personal use of a firearm enhancement allegation. (*People v. Houston* (2012) 54 Cal.4th 1186, 1227 [failure to object to adequacy of notice forfeits issue].) That is likely why Cruz also asserts his sentence was unauthorized, an issue that is not forfeited for failure to object at trial. (*Anderson, supra,* 9 Cal.5th at p. 962.) Like the *Anderson* court, we address the merits. (*Id*. at pp. 962-963; *People v. Williams* (1998) 17 Cal.4th 148, 161, fn. 6 (*Williams*) [court of appeal discretion to address issue party did not preserve].)

Here, both the complaint and the information alleged the firearm enhancement pursuant to section 12022.53, subdivisions (d) and (e). Although the charging documents had language parroting section 12022.53, subdivision (e), the charging documents made clear the prosecution was proceeding under either a theory Cruz was the shooter or was vicariously liable for a fellow gang member's shooting. (*People v. Carrington* (2009) 47 Cal.4th 145, 182 [charging document states allegations in any words sufficient to give defendant notices of charges].) Cruz had fair notice of the charges against him and had a reasonable opportunity to prepare a defense and avoid unfair surprise at trial.

Section 12022.53, subdivision (d), provides for 25 years to life for the personal and intentional discharge of a firearm causing great bodily injury or death. Section 12022.53, subdivision (e)(1), provides for vicarious liability in gang cases—i.e., the enhancements apply to anyone who is a principal in the commission of an offense when a principal committed an act specified in subdivisions (b), (c), or (d). The jury found true Cruz was a principal and personally and intentionally discharged a firearm

28

causing death. It found not true he was a principal and that another principal intentionally discharged a firearm causing death whereas it reached opposite verdicts as to Aquino. As *Anderson* requires, the sentence enhancement was alleged in the accusatory pleading and found true by the trier of fact. (*Anderson, supra,* 9 Cal.5th at p. 953.)

Cruz relies on *Anderson* to argue he did not receive fair notice. We disagree. In *Anderson*, the information did not allege the enhancements as to the counts in question, but the court instructed on them. (*Anderson, supra,* 9 Cal.5th at p. 951.) Unlike in *Anderson*, here, the information alleged the personal use of a firearm enhancement in compliance with the pleading requirements by reference to section 12022.53, subdivision (d). Cruz had notice of the section 12022.53, subdivision (d), enhancement allegation, the trial court did not impose an unauthorized sentence.

*IV. Sentencing Issues*

*A. Section 3051*

Cruz contends section 3051, subdivision (h), violates his equal protection rights because his Three Strikes sentence precludes him from receiving a youth offender parole hearing. Assuming for the sake of argument his claim is not forfeited for failing to object on these grounds below (*Alexander, supra,* 49 Cal.4th at p. 918), it is meritless.

For a successful equal protection claim, we must determine whether the state classifies two similarly situated groups in an unequal way and if there is a rational basis for the distinction. (*People v. Foster* (2019) 7 Cal.5th 1202, 1211-1212.) Our review is de novo. (*California Grocers Assn. v. City of Los Angeles* (2011) 52 Cal.4th 177, 208.)

Typically, when a defendant receives an indeterminate sentence for crimes he committed when he was under the age of 25, he is entitled to early parole consideration in the form of a youthful offender parole hearing during the 25th year of his incarceration. (§ 3051, subd. (b)(3).) But when, as here, the defendant is sentenced

29

pursuant to the Three Strikes law, he is not eligible for such a hearing. (§ 3051, subd. (h).) Cruz, who was 19 years old at the time of the offense, asserts this exclusion violates equal protection. *People v. Wilkes* (2020) 46 Cal.App.5th 1159 (*Wilkes*), is instructive.

In *Wilkes*, the court rejected such a challenge, explaining the following: "Numerous courts have rejected equal protection challenges to the differential treatment of Three Strikes offenders, concluding that such offenders are not similarly situated to nonrecidivist offenders and/or that a rational basis exists to treat them differently. . . . 'It is reasonable for the Legislature to distinguish between those felons . . . who come to court with a history of serious or violent felony convictions and those who do not.' [Citations.]" The court concluded that "[a]ssuming a Three Strikes youth offender is similarly situated to other youth offenders for purposes of section 3051, the Legislature could rationally determine that the former—'a recidivist who has engaged in significant antisocial behavior and who has not benefited from the intervention of the criminal justice system' [citation]—presents too great a risk of recidivism to allow the possibility of early parole." (*Id.* at pp. 1165-1166.) The *Wilkes* court found the reasoning in *People v. Edwards* (2019) 34 Cal.App.5th 183, 197 (*Edwards*), regarding first time offenders sentenced under the One Strike law to be inapplicable to a defendant with a prior criminal history sentenced under the Three Strikes law.[11] (*Wilkes, supra,* 46 Cal.App.5th at pp. 1166-1167; accord *People v. Moore* (2021) 68 Cal.App.5th 856, 863-864.)

We find the *Wilkes* court's reasoning persuasive and reject Cruz's equal protection claim. These principles require we reject his assertions that exclusion of Third Strikers violates the holdings in *Graham v. Florida* (2010) 560 U.S. 48, *Miller v.*

---

[11] There is currently a split of authority as to whether section 3051 violates equal protection by excluding youth offenders who were sentenced under the One Strike law (§ 667.61). (*Edwards, supra,* 34 Cal.App.5th at p. 197 [equal protection violation]; contra *People v. Williams* (2020) 47 Cal.App.5th 475, 493 [no equal protection violation], review granted July 22, 2020, S262191.)

*Alabama* (2012) 567 U.S. 460, and *People v. Caballero* (2012) 55 Cal.4th 262. The Legislature plainly accounted for these decisions when it enacted section 3051. (*People v. Franklin* (2016) 63 Cal.4th 261, 268 [Legislature enacted sections 3051 and 4801 "to bring juvenile sentencing in conformity with *Miller*, *Graham*, and *Caballero*"].)

*B. Romero Motion*

Cruz asserts the trial court erred by refusing to strike his strike conviction. We disagree.

*1. Background*

At the sentencing, the trial court stated it was aware it had the authority to "strike the strike." As relevant here, Cruz's trial counsel requested the court strike his prior conviction under section 1385.

Quoting from *People v. Briceno* (2004) 34 Cal.4th 451, 462, the trial court stated criminal street gangs are becoming more violent, gang-related violence poses a significant threat to public safety, and gang-related felonies should result in severe penalties. After detailing sentencing objectives provided for in California Rules of Court, rule 4.410, the court turned to the facts of the case.

The court stated the following: "[T]his is a tragic death of an innocent young girl. What we came to learn today is that this is a young girl that had already impacted her community. [¶] I have handled many sentencings of serious and violent offenses. I've never had a teacher come and speak on behalf of a child like this. I've never had family members make the statements about that, and this court will never forget the testimony of her father during the trial, when his daughter died in his arms."

The trial court cited to *Romero, supra,* 13 Cal.4th at pages 504, 531, for the proposition the Three Strikes law was designed to increase prison for repeat offenders and notes this case involved gangs and guns. The court provided the applicable standard as articulated in *Williams, supra,* 17 Cal.4th at page 161, and again turned to the facts of this case.

31

The trial court stated as follows: "When I go down the various factors, we begin with that the nature of the current offense is less serious than other felonies. Such is not the case here. There is no more serious felony than the murder of a human being. [¶] Is the current offense not a serious or violent offense? It is qualified as both under the law. [¶] Whether or not the facts and circumstances of the current offense indicate a greater degree of danger to society. They do. Whether or not there was injury to another person. Obviously, there was the most serious form of injury. [¶] Whether or not there was a weapon used in the current offense, which there was. [¶] Whether or not the defendant was a passive participant or played a minor role in the current offense. He is clearly neither of those. [¶] Whether or not the victim was the initiator of or a willing participant or an aggressor or provoker of the incident. Such is not the case here. [¶] Whether or not the defendant's criminal conduct was partially excusable for some other reason not amounting to a defense. We do not have that here. There is no—no suggestion of coercion, there's no suggestion of duress, there's no suggestion of alcoholism or drug abuse in this situation. [¶] The defendant's prior is not remote, the defendant had been given a chance on probation, had failed, and then was sentenced to prison only a very short period of time, and if the defendant had complied with the law, he was not allowed to be in possession of a firearm, and one could say that there's a strong likelihood that this offense would not have occurred. [¶] For all those reasons, the court declines to strike any of the sentencing enhancements or prior conviction in this case."

2. *Law & Analysis*

Section 1385, subdivision (a), states a trial court "may, either on his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed." Our Supreme Court stated that "pursuant to . . . section 1385[, subdivision] (a), a trial court may strike an allegation or vacate a finding under the so-called 'Three Strikes' law [citations] that a defendant has previously been

32

convicted of a 'serious' and/or 'violent' felony as defined therein. [Citation.]" (*Williams, supra,* 17 Cal.4th at pp. 151-152, fn. omitted.) In deciding whether to exercise its discretion to do so, a court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*Id*. at p. 161.)

"[T]he three strikes law not only establishes a sentencing norm, it carefully circumscribes the trial court's power to depart from this norm and requires the court to explicitly justify its decision to do so. In doing so, the law creates a strong presumption that any sentence that conforms to these sentencing norms is both rational and proper. [¶] In light of this presumption, a trial court will only abuse its discretion in failing to strike a prior felony conviction allegation in limited circumstances. For example, an abuse of discretion occurs where the trial court was not 'aware of its discretion' to dismiss [citation], or where the court considered impermissible factors in declining to dismiss [citation]. Moreover, 'the sentencing norms [established by the Three Strikes law may, as a matter of law,] produce[] an "arbitrary, capricious or patently absurd" result' under the specific facts of a particular case. [Citation.] [¶] But '[i]t is not enough to show that reasonable people might disagree about whether to strike one or more' prior conviction allegations. [Citation.] '[W]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance' [citation]. Because the circumstances must be 'extraordinary . . . by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the

33

circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary. Of course, in such an extraordinary case—where the relevant factors described in *Williams, supra,* 17 Cal.4th 148, . . . manifestly support the striking of a prior conviction and no reasonable minds could differ—the failure to strike would constitute an abuse of discretion." (*People v. Carmony* (2004) 33 Cal. 4th 367, 378.)

Here, the trial court did not abuse its discretion by refusing to strike Cruz's prior strike conviction because he was the *epitome* of the type of offender who falls squarely within the Three Strikes law. First, the nature and circumstances of the present offense could not be any more serious and tragic. The record supports the conclusion Cruz was calling the shots. Cruz directed Aquino to drive him home, and after Cruz armed himself with a gun, he instructed Aquino to drive into rival gang territory. Near a school and a park filled with adults and children, Cruz saw men who he believed were rival gang members. Cruz opened fire. He missed them, but one of the bullets struck and killed X.M., who at only nine years old was already mature and responsible. This is illustrated by the fact that after she was shot she tried to protect her two younger sisters.

Additionally, similar to the charged offense, the nature and circumstances of Cruz's prior strike conviction involved gang-related conduct committed with Aquino. About one year before the charged offense, Cruz was in a car with Aquino when officers pulled them over and found a billy. As a result of that July 2014 gang-related conviction, Cruz was ordered not to associate with Aquino or other gang members or possess any weapons. Needless to say, he ignored the court's orders and not only continued participating in the same prohibited conduct but exhibited increased dangerousness. Three months after agreeing to live a law-abiding life, he killed X.M.

Cruz claims the trial court abused its discretion, citing to his age, the relatively minor nature of his strike conviction, and his difficult upbringing. The record

before us includes this information.  However, it is presumed the court considered all the relevant factors in the absence of an affirmative record to the contrary.  (*People v. Pearson* (2008) 165 Cal.App.4th 740, 749.)  It could not be clearer this is not the case where the defendant may be deemed outside the Three Strikes law's spirit.  Thus, the trial court did not abuse its discretion by refusing to strike Cruz's prior conviction.

*C.  Recent Legislation*

Cruz argues recent legislation, effective January 1, 2022, applies retroactively and the sentences on counts 3 and 4 must be struck.[12]  The Attorney General agrees.

Effective January 1, 2022, section 1170 was amended.  (Sen. Bill No. 567 (2021-2022 Reg. Sess.) Stats. 2021, ch. 731, § 1.3; Assem. Bill No. 124 (2021-2022 Reg. Sess.) Stats. 2021, ch. 695, § 5.)  Pursuant to Senate Bill No. 567 (SB 567), section 1170, subdivision (b), requires a trial court to impose the middle term for any offense with a sentencing triad unless "there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(1) & (2).)  Assembly Bill No. 124 (AB 124) created a presumption in favor of a low prison term when a defendant is under 26 years of age at the time of the offense.  (§ 1170, subd. (b)(6)(B).)

Effective January 1, 2022, Assembly Bill No. 518 (AB 518) amended section 654, subdivision (a), removing the requirement that an act or omission that is punishable by multiple statutes be punished under the statute providing for the longest term of imprisonment.  (Stats. 2021, ch. 441, § 1.)  Section 654, subdivision (a) now

---

[12]  Cruz also references count 2, but because we reverse his conviction on that count we need not discuss it further.

35

reads in pertinent part: "An act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision."

Cruz asserts, and the Attorney General agrees, the amendments to sections 1170 and 654 apply retroactively in Cruz's case because they make ameliorative changes in the law, which apply to all nonfinal convictions. (*People v. Mendoza* (2022) 74 Cal.App.5th 843, 862 [AB 518 retroactive]; *People v. Flores* (2022) 73 Cal.App.5th 1032, 1038-1039 [SB 567 & AB 124 retroactive].) Here, the trial court imposed upper terms on count 3, and presumably on count 4, and stayed the sentence on count 4. Thus, SB 567, AB 124, and AB 518 are all implicated.

The Attorney General posits that because SB 567 concerning imposition of upper terms requires we strike the sentences on counts 3 and 4 and remand for resentencing, we need not address the applicability of AB 124 concerning youthful offenders or AB 518 regarding stayed counts. True, when part of a sentence is reversed on appeal, the full resentencing rule permits the trial court to revisit all prior sentencing decisions and sentence the defendant anew. (*People v. Valenzuela* (2019) 7 Cal.5th 415, 424-425; *People v. Buycks* (2018) 5 Cal.5th 857, 893 (*Buycks*).) Because we strike the sentences on counts 3 and 4, and the prosecution may elect to retry Cruz on the gang offense and enhancements, the trial court will have the opportunity to consider all the counts under the statutes that are in effect at the time of sentencing.

In his supplemental opening brief, Cruz requests we remand for resentencing without addressing whether the prosecution may seek to prove the existence of aggravating circumstances to support imposition of upper terms. The Attorney General in his supplemental brief asserts the prosecution should be given the opportunity either to prove the existence of aggravating circumstances before a jury in compliance with section 1170, subdivision (b)(2), or to submit to resentencing based on the state of

36

the current record. Cruz did not file a supplemental reply brief and thus offers no response. We agree with the Attorney General.

Assuming for the sake of argument the double jeopardy clause applies to sentencing factors, Cruz has never been tried on any of the aggravating circumstances, rendering this constitutional provision inapplicable. (See *People v. Monge* (1997) 16 Cal.4th 826, 832 [double jeopardy clause "'protects against a second prosecution for the same offense after acquittal'"].) Additionally, section 1170, subdivision (b)(2), does not increase the punishment for an offense because the same statutorily-prescribed sentencing range remains intact. (See *Collins v. Youngblood* (1990) 497 U.S. 37, 46 [ex post facto law imposes additional punishment to what was originally prescribed].) Thus, on remand, the prosecution should be given the opportunity to prove the existence of aggravating circumstances in compliance with the amended statute.

*D. Abstracts of Judgment*

Cruz requests we order the determinate and indeterminate abstracts of judgment be corrected. As we explain above, when an appellate court strikes part of a sentence on review, on remand the trial court can exercise its sentencing discretion on all counts considering the changed circumstances. (*Buycks, supra,* 5 Cal.5th at p. 893.) We need not address Cruz's request to correct the abstracts of judgment because new abstracts of judgment will be prepared after resentencing.

DISPOSITION

As to count 1, we reverse the jury's true finding on the gang allegation (§ 186.22, subd. (b)(4)), and strike the 15-year minimum parole eligibility period under section 186.22, subdivision (b)(5). We reverse Cruz's conviction on count 2. We vacate the sentences on counts 3 and 4. We reverse the jury's true findings on the gang

37

allegations as to counts 3 and 4 (§ 186.22, subd. (b)(1)).  In all other respects, the judgment is affirmed.  The matter is remanded for further proceedings consistent with this opinion.

O'LEARY, P. J.

WE CONCUR:

MOORE, J.

MARKS, J.*

*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.